## STATE OF CONNECTICUT *v.* RAYMOND JOHNSON
### (10514)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued March 30—decision released June 28, 1983

*David P. Ball,* with whom, on the brief, was *Steven M. Olivo,* for the appellant (defendant).

*Carl Schuman,* assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Brian E. Cotter,* assistant state's attorney, for the appellee (state).

PARSKEY, J. The defendant, Raymond Johnson, was charged with one count of larceny in the first degree in that he obtained money by false promise in violation of General Statutes §§ 53a-119 (3) and 53a-122 (a) (2). After a trial to the jury, the defendant was found guilty and the trial court imposed a sentence of not less than four nor more than eight years. From that judgment the defendant has appealed.

The jury could reasonably have found the following facts. The defendant was a Bethel police officer who had a part-time job with Jones Motor Freight. In mid-February, 1979, the defendant visited Earl LeClair, an acquaintance, who managed and resided in the Sea Gull Motel in Bethel. The defendant asked LeClair if he trusted him and LeClair responded affirmatively. The defendant then told LeClair that he knew a way of making a lot of money without getting into trouble.

The defendant explained that a friend of his controlled a currency distribution center in Springfield, Massachusetts, that periodically the friend would haul money from Philadelphia to Springfield, and that he would pick up a load of old money at regular intervals and return it to Philadelphia to be shredded. This person had access to an extra truck "seal" that carried the same number as the actual seal on his truck. The friend was retiring, and April 19 would be his last run. The defendant claimed that for $50,000 the friend would supply him with the additional seal.

The defendant outlined his plan to LeClair. The truck would stop near the motel on one of its trips. There the defendant would break the seal, take off a few bags of money to be left at the motel, and reseal the truck with the newly purchased seal. LeClair was told that he could stand to gain between $800,000 and $900,000.

The defendant stopped by the motel several times to discuss his scheme with LeClair. Claiming to have $10,000, the defendant requested that LeClair provide the balance.

LeClair, after making various loan arrangements to secure the money, was met by the defendant at the motel on April 18, 1979. There LeClair gave the defendant a briefcase containing $40,000 in cash. The defendant, on the back of a business card, wrote a truck and trailer number and the length of the truck that supposedly would carry the currency. The defendant was to pick up the truck in Philadelphia, drive to Springfield, and then stop on the way back around 11:30 to 11:45 on April 19. He advised LeClair not to say anything to anyone and to stay near the phone. The two shook hands. Earl LeClair did not see the defendant again until the day of trial.

The defendant left the state the next morning. His wife called the police station to say that he was sick. From April 23 to May 7, the defendant, using the name of Richard Wayne, stayed at the Tennessee Hotel in Memphis. On May 25, the defendant arrived in Tucson, Arizona to stay with his daughter. That night he learned from her that a warrant had been issued for his arrest. The defendant returned in mid-June and met his wife at a New Haven hotel. Knowing that authorities wanted him, he nonetheless left the state again, this time for North Carolina. Thereafter, arrangements were made for a Danbury police officer to meet the defendant upon his arrival in a plane landing at LaGuardia Airport. The officer drove the defendant to Connecticut where he was arrested for the charge of which he now stands convicted.

This appeal involves four claims of error. At issue is whether the court erred (1) by not granting the

defendant's motion to dismiss brought on speedy trial grounds; (2) by permitting testimony concerning prior misconduct of the defendant; (3) by excluding the defendant's proposed testimony concerning the former police chief of the town of Bethel; and (4) by ordering the examination of certain witnesses outside the presence of the jury.

## I

The defendant first asserts that the court erred by denying his motion to dismiss brought on speedy trial grounds. See Practice Book § 815 (7).

The defendant was arrested on June 20, 1979. On July 10, 1979, the defendant entered a plea of not guilty. Thereafter, on August 27, 1980, the defendant filed a motion to dismiss on speedy trial grounds. The motion was heard and denied on October 7, 1980. After a trial to the jury, the defendant was found guilty on October 17, 1980.

The sixth amendment guarantee of a speedy trial is a fundamental right applicable to the states through the fourteenth amendment to the United States constitution. *Klopfer* v. *North Carolina,* 386 U.S. 213, 223, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967). This right is also guaranteed by the Connecticut constitution, article first, § 8. Although the right to a speedy trial is fundamental, it is necessarily relative, since a requirement of unreasonable speed would have an adverse impact both on the accused and on society. *United States* v. *Ewell,* 383 U.S. 116, 120, 86 S. Ct. 773, 15 L. Ed. 2d 627 (1966); *State* v. *Troynack,* 174 Conn. 89, 91, 384 A.2d 326 (1977). The Supreme Court of the United States and this court have identified four factors which form the matrix of the defendant's constitutional right to speedy adjudication: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and

prejudice to the defendant.'' *Barker* v. *Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State* v. *Lloyd,* 185 Conn. 199, 208, 440 A.2d 867 (1981); *State* v. *Nims,* 180 Conn. 589, 591, 430 A.2d 1306 (1980). A balancing test is to be applied on a case by case basis. None of the factors standing alone demands a set disposition; rather it is the total mix which determines whether the defendant's right was violated. *State* v. *Nims,* supra, 591–92.

Although the sixteen month delay involved herein is not unreasonable per se; *State* v. *Nims,* supra, 592; *State* v. *Troynack,* supra; it is sufficiently long to require an examination of the other factors that go into the balance. *State* v. *Brown,* 172 Conn. 531, 536, 375 A.2d 1024, cert. denied, 434 U.S. 847, 98 S. Ct. 153, 54 L. Ed. 2d 114 (1977). The state's explanation, crowded court dockets, while not favored, does not establish the defendant's case. *State* v. *Lloyd,* supra, 209.

The ''defendant's assertion of the right'' by a motion to dismiss on speedy trial grounds was not filed until August 27, 1980, approximately fourteen months after his arrest. This factor militates against the defendant's claim. The failure to assert the right, while not constituting a waiver, does make it difficult for the defendant to prove that he was denied a speedy trial. *Barker* v. *Wingo,* supra, 528, 531–32.

The final factor in the balancing test is prejudice to the defendant. ''Prejudice . . . should be assessed in the light of the interests of the defendants which the speedy trial right was designed to protect . . . . [The United States Supreme] Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'' *Barker* v. *Wingo,* supra, 532. In the pres-

ent case the defendant was free on bond pending trial and there is no claim that he suffered excessive anxiety and concern. The defendant's claim is rather that the delay in instituting the trial rendered him unable to secure the testimony of two witnesses "essential to the presentation of the defense."

The defendant's motion to dismiss was heard on October 7, 1980. Only the representations of counsel were offered to the court; no evidence was presented. The defendant's counsel represented to the court that two witnesses had absented themselves from the jurisdiction. Counsel claimed that at least one of these witnesses would have been available had the trial commenced earlier. Counsel did not indicate, however, what role the witnesses would play in the defense or demonstrate when the witnesses had left the jurisdiction. The court denied the motion to dismiss finding that the delay was reasonable and that the defendant had not been prejudiced.

"[I]f a defendant merely alleges . . . inability to locate known or unknown witnesses who might testify on his behalf, he has failed to illustrate prejudice with the required degree of specificity. *United States* v. *Ewell*, 383 U.S. 116, 122, 86 S. Ct. 773, 15 L. Ed. 2d 627 [1966]; *United States* v. *Churchill*, 483 F.2d 268, 273–74 (1st Cir. [1973])." *State* v. *L'Heureux*, 166 Conn. 312, 321, 348 A.2d 578 (1974). The defendant must show that the missing witness could supply material evidence for the defense. *Smith* v. *Mabry*, 564 F.2d 249, 253 (8th Cir. 1977), cert. denied, 435 U.S. 907, 98 S. Ct. 1456, 55 L. Ed. 2d 499 (1978). Conclusory, vague or oblique allegations are discountenanced. *State* v. *Lasher*, 190 Conn. 259, 266, 460 A.2d 970 (1983). Further, the defendant failed to establish that even without the delay the witnesses would have been available. See *State* v. *Troynack*, supra, 94.

We conclude that the court's finding that the delay occasioned no prejudice to the defendant was not clearly erroneous. On balance we find that the defendant was not deprived of his constitutional right to a speedy trial.

## II

With respect to the evidence of other misconduct introduced at trial, the defendant claims error on several grounds.

The evidence provided through the testimony of Michael Payuk indicated that the defendant had approached him on March 31. The two met at Payuk's house but then adjourned to Bethel High School so that they could talk in private. There the defendant told Payuk that he knew a man who would soon retire from a mint in Massachusetts where the Treasury disposed of money. If Payuk could produce $30,000, according to the defendant, then the man at the mint would provide a seal for a Treasury truck. The defendant would drive the truck, open it, take the used money out, and replace the broken seal with the newly-purchased one. Payuk and the defendant would then split the proceeds.

Payuk felt that the plan was unbelievable and impossible and that, in any event, he could not raise that kind of money. He nevertheless told the defendant that he would see what he could do. The defendant accordingly phoned, on April 18, to find out whether Payuk had generated the cash; Payuk replied that he had been unsuccessful. At approximately 7:30 a.m. the defendant called again with the same inquiry. Payuk responded that he had not raised the money and that the deal was off.

The trial court admitted this evidence as having sufficient probative value in showing intent, motive,

and a common scheme on the part of the defendant to outweigh its prejudicial tendency. The defendant appears to be contending that the state failed to establish the purpose for the admission of the Payuk testimony; that the evidence was unnecessary; that the evidence was improperly admitted on an element that was not in dispute; and that because the Payuk transaction did not constitute a crime, the evidence was inadmissible. We find these claims unpersuasive.

"The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. E.g., *State* v. *Tucker,* 181 Conn. 406, 416, 435 A.2d 986 (1980); *State* v. *McCarthy,* 179 Conn. 1, 22, 425 A.2d 924 (1979); *State* v. *Turcio,* 178 Conn. 116, 129, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980). Because of its prejudicial impact, it is well settled in Connecticut and other jurisdictions that evidence of prior acts of misconduct is inadmissible merely to show a defendant's bad character or tendency to commit criminal acts. *Spencer* v. *Texas,* 385 U.S. 554, 560–61, 87 S. Ct. 648, 17 L. Ed. 2d 606, reh. denied, 386 U.S. 969, 87 S. Ct. 1015, 18 L. Ed. 2d 125 (1967); *State* v. *Barlow,* 177 Conn. 391, 393, 418 A.2d 46 (1979); *State* v. *Hauck,* 172 Conn. 140, 143–44, 374 A.2d 150 (1976). Equally well settled, however, are several exceptions to this general rule. Evidence tending to prove prior criminal conduct which is relevant and material to an element of the crime, identity, malice, motive, or which shows a pattern of criminal activity is admissible if the trial court determines, in the exercise of its sound discretion, that its probative value outweighs its prejudicial impact. *State* v. *Falby,* 187 Conn. 6, 23–24, 444 A.2d 214 (1982); *State* v. *Ryan,* 182 Conn. 335, 337, 438 A.2d 107 (1980); *State* v. *Barlow,* supra, 393–94. Because of the difficulties inherent in this balancing process, the

trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. E.g., *State* v. *Tucker,* supra, 416; *State* v. *Turcio,* supra, 129; *State* v. *Hauck,* supra, 144. On review by this court, therefore, 'every reasonable presumption should be given in favor of the trial court's ruling.' *State* v. *Ryan,* supra, 337." *State* v. *Howard,* 187 Conn. 681, 684–85, 447 A.2d 1167 (1982).

Despite the defendant's contention to the contrary, the transcript indicates that the challenged evidence was offered to show intent, motive and common scheme and was admitted on that basis. The state was not required to select only one exception. Given the burden of proof on the state in a criminal prosecution, and the requirements of General Statutes § 53a-119 (3),[1] the necessity for the evidence is readily apparent. The state may introduce all legally competent evidence which aids the trier of fact in determining the relevant issues. *State* v. *Howard,* supra, 688; *Burns* v. *Gould,* 172 Conn. 210, 214, 374 A.2d 193 (1977). The burden was squarely on the state to prove that the defendant was acting "pursuant to a scheme to defraud" and the testimony was sufficiently probative on that element to outweigh any prejudicial tendency. *State* v. *Falby,* supra, 24. Because the evidence was relevant to show a common plan or an unusual technique to commit a crime we see no reason to exclude it. *State* v. *Nardini,* 187 Conn. 513, 519, 447 A.2d 396 (1982).

---

[1] General Statutes (Rev. to 1979) § 53a-119 (3) provides: "Obtaining property by false promise. A person obtains property by false promise when, pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct, and when he does not intend to engage in such conduct or does not believe that the third person intends to engage in such conduct. In any prosecution for larceny based upon a false promise, the defendant's intention or belief that the promise would not be performed may not be established by or inferred from the fact alone that such promise was not performed."

We reject the defendant's assertion that the elements of intent and motive were not at issue in the prosecution because the defendant's claim at trial was that he was not the individual who committed the crime. The defendant did not offer an alibi defense. By his plea of not guilty the defendant put in issue every element of the crime charged. The burden was on the state to prove each element beyond a reasonable doubt. *State* v. *Griffin,* 175 Conn. 155, 162, 397 A.2d 89 (1978). And, as noted before, the state was entitled to introduce such legally competent evidence. *State* v. *Howard,* supra, 688.

We also reject the defendant's remaining contention that the evidence was inadmissible because it did not constitute a prior crime. We need not speculate whether the defendant's role in the Payuk transaction was sufficient to give rise to criminal liability. We note simply that the evidence is admissible whether or not it constitutes a prior crime because it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. See McCormick, Evidence (2d Ed.) § 190. This principle is not effectuated by requiring that the prior conduct constitute a crime. See *State* v. *Ryan,* supra, 337 (sanctioning admission to prior act of misconduct).

## III

The defendant next assigns as error the exclusion of the defendant's proposed testimony concerning his alleged detection and exposure of wrongdoing by the former chief of police and officers of the Bethel police department. It was the defendant's claim that the former chief of police, who was not a witness in the case, and the victim, LeClair, were working together to incriminate him. The court, after hearing the offer of

proof, ruled that the defendant had failed to establish a connection between LeClair and the former police chief; that the evidence was "sending the Court off on a wild goose chase"; and that the evidence was without relevance.

It is well established in Connecticut that courts have wide discretion in ruling on the relevancy of evidence. *State* v. *Varricchio,* 176 Conn. 445, 450, 408 A.2d 239 (1979); *State* v. *Towles,* 155 Conn. 516, 523, 235 A.2d 639 (1967). " 'It is a reasonable exercise of judicial discretion to exclude questions which would introduce issues foreign to the case; *State* v. *Dortch,* 139 Conn. 317, 325, 93 A.2d 490 [1952]; or evidence the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated on vital issues of the case. *State* v. *Bassett,* 151 Conn. 547, 551, 200 A.2d 473 [1964].' *State* v. *Mahmood,* 158 Conn. 536, 540, 265 A.2d 83 [1969]." *State* v. *Moynahan,* 164 Conn. 560, 589–90, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973).

Even assuming arguendo that the proffered testimony may have demonstrated that the former chief of police might have harbored ill will toward the defendant, after our review of the transcript, we cannot find that the trial court abused its wide discretion in concluding that the testimony failed to connect LeClair to the former chief of police and was thus not relevant.

## IV

We find the defendant's remaining claim to be without merit warranting only summary discussion. *State* v. *Maturo,* 188 Conn. 591, 600, 452 A.2d 642 (1982).

The defendant asserts that the trial court violated his constitutional right to a trial by jury when it ordered that a preliminary examination of two witnesses, one for the defense and one for the state, take place out of the presence of the jury. It is to be underscored that the defendant challenges only the procedure and does not assign as error the court's exclusion of the proffered evidence. The defendant's claim, in short, is that he has a constitutional right to present inadmissible evidence to the jury. The court did not err. "Obviously the more prudent and better procedure is for the court to determine in the absence of the jury questions as to the admissibility of evidence·if for no other reason than that such a procedure obviates any risk that the jury may hear evidence which the court ultimately determines to be inadmissible. See *Pinto* v. *Pierce,* 389 U.S. 31, 32, 88 S. Ct. 192, 19 L. Ed. 2d 31 [1967]." *State* v. *Panella,* 168 Conn. 532, 540, 362 A.2d 953 (1975); *State* v. *White,* 37 Conn. Sup. 796, 805, 437 A.2d 145 (1981).

There is no error.

In this opinion the other judges concurred.