STATE OF CONNECTICUT *v.* ROLF ALMGREN
(4285)

HULL, DALY and BIELUCH, Js.

Argued May 14—decision released September 15, 1987

*John C. Parker,* for the appellant (defendant).

*Michael E. O'Hare,* assistant state's attorney, with whom, on the brief, was *Julian Schlesinger,* special assistant state's attorney, for the appellee (state).

■■■■■■■■■

BIELUCH, J. The defendant appeals from a judgment of conviction, after a jury trial, of disorderly conduct in violation of General Statutes § 53a-182[1] and interfering with an officer in violation of General Statutes § 53a-167a.[2] The defendant claims that the trial court erred in failing to dismiss the charges against him for lack of a speedy trial. We agree and therefore find error.

The jury could reasonably have found the following facts. The defendant was arrested in the early morning hours of September 4, 1982, after two Enfield police officers were called by the desk clerk of the Harley Hotel in Enfield because of a noisy party involving the defendant, his wife, and a group of family members and friends gathered in his room. The defendant became involved in an altercation with the police and, as a result, was arrested and charged with assault on an officer in violation of General Statutes § 53a-167c as well as the charges for which he was convicted.

The following procedural facts are relevant to the defendant's claim on appeal. The defendant was arraigned on September 21, 1982; he entered a plea of not guilty to all charges and elected to be tried by a jury. The case was pretried on October 2, 1982, at

[1] General Statutes § 53a-182 provides: "(a) A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise; or (4) without lawful authority, disturbs any lawful assembly or meeting of persons; or (5) obstructs vehicular or pedestrian traffic; or (6) congregates with other persons in a public place and refuses to comply with a reasonable official request or order to disperse.

"(b) Disorderly conduct is a class C misdemeanor."

[2] General Statutes § 53a-167a provides: "(a) A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties.

"(b) Interfering with an officer is a class A misdemeanor."

which time the defendant was advised that there would be no plea bargain and he would have to go to trial on the original charges. The case was assigned for trial successively on October 27, 1982, December 3, 1982, January 27, 1983, March 8, 1983, April 8, 1983, May 17, 1983, July 6, 1983, August 19, 1983, and September 1, 1983.

On September 6, 1983, the defendant was notified that his case was on "standby," subject to a one and one-half hour notice to commence trial, but he did not go to trial from that assignment. The case was thereafter further assigned for trial on October 4, 1983, and November 1, 1983.

On December 2, 1983, he was ordered to a further pretrial conference, again to no avail, but he was given the status of "first ready case," subject to a two hour call that never came. Thereafter, the case was assigned for trial on January 4, February 7 and March 6, 1984. The defendant's counsel was called to a third pretrial on March 20, 1984, again with no resulting agreement. He was then informed that the defendant's case was the "next ready" case to be tried. The defendant and his counsel prepared for trial again. The defendant this time issued subpoenas for about twenty-five witnesses at a cost of approximately $700. These subpoenas expired when the case was not reached as scheduled. The case continued, however, to be assigned monthly through July, 1984.

On April 5, 1984, nineteen months after his arrest, the defendant filed the first of three written motions to dismiss for lack of a speedy trial. This motion was not set down for a hearing. Therefore, on July 9, 1984, the defendant refiled his original motion to dismiss for lack of a speedy trial, together with a second motion to dismiss on the same ground, but with a complete rec-

ital of the case assignments for appearance and trial to that date. The trial court thereafter denied both motions.

At the time of the court's denial of the defendant's first two motions to dismiss for lack of a speedy trial on July 23, 1984, the case against him was over twenty-two and one-half months old and had, by the court's own count, been assigned for trial twenty times. The defendant and his counsel, both residents of Fairfield County, had appeared on thirteen occasions ready for trial at the Superior Court for geographical area number thirteen, jury trials for which were then being held in Manchester. Although the trial court acknowledged the lengthy delay and frustration experienced by the defendant, it concluded that under the balancing test set out in *Barker* v. *Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), "the interests of the people of the state prevail." The court subsequently ordered that the defendant's case would be the "number one ready" case on October 1, 1984. The defendant, however, was not allowed to go on trial on subsequent assignment dates of October 2, 1984, November 27, 1984, January 22, 1985, February 5, 1985, February 26, 1985, and March 13, 1985.

When the case was assigned for trial on April 30, 1985, the defendant filed his third motion to dismiss the information for lack of a speedy trial. The court heard and denied the defendant's motion on the same day, after which trial immediately began with jury selection, thirty-two months after the defendant was arrested, and after twenty-five assignments for trial, some of which were expressly declared by the court to be of top priority status.

The defendant claims that this delay in his prosecution was a violation of his constitutional right to a speedy trial and, consequently, that the trial court

should have dismissed the charges against him. "The sixth amendment guarantee of a speedy trial is a fundamental right applicable to the states through the fourteenth amendment to the United States constitution. *Klopfer* v. *North Carolina,* 386 U.S. 213, 223, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967). This right is also guaranteed by the Connecticut constitution, article first, § 8." *State* v. *Johnson,* 190 Conn. 541, 544, 461 A.2d 981 (1983). The United States Supreme Court and the Connecticut Supreme Court have stated that there are four factors which should be considered in assessing a defendant's constitutional right to a speedy trial. They are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker* v. *Wingo,* supra, 530; *State* v. *Johnson,* supra, 544–45. This balancing test is to be applied on a case by case basis. " 'None of the factors standing alone demands a set disposition; rather it is the total mix which determines whether the defendant's right was violated.' *State* v. *Johnson,* [supra, 544]." *State* v. *Gasparro,* 194 Conn. 96, 99–100, 480 A.2d 509 (1984); cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985). Our consideration of the four *Barker* factors leads us to the conclusion that the defendant has established that he was denied his constitutional right to a speedy trial.[3]

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker* v. *Wingo,* supra. The defendant's arrest on Sep-

[3] The defendant relies on both the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution, but offers no separate analysis of the Connecticut constitution as a basis for different treatment between the federal and state constitutional claims. We decline to undertake such an analysis. See *State* v. *Camerone,* 8 Conn. App. 317, 321 n.1, 513 A.2d 718 (1986).

tember 4, 1982, activated the protection afforded him by the constitutional speedy trial guarantee. *Dillingham* v. *United States,* 423 U.S. 64, 65, 96 S. Ct. 303, 46 L. Ed. 2d 205 (1975). The defendant's trial began on April 30, 1985, thirty-two months later. The state concedes that this delay is sufficiently long to warrant further inquiry. The Connecticut Supreme Court and this court have found that similar delays, while not sufficient in themselves to establish a speedy trial violation, were sufficient to warrant inquiry into the other *Barker* factors. See, e.g., *State* v. *Gasparro,* supra, (three and one-half years); *State* v. *Davis,* 192 Conn. 739, 474 A.2d 776 (1984) (twenty-six months); *State* v. *Cleary,* 3 Conn. App. 349, 488 A.2d 831 (1985) (thirty-six months).[4]

We next consider the reasons for the delay in the defendant's prosecution. Except for a brief continuance sought by the defendant, the state bears the responsibility for the thirty-two month delay between the date of the defendant's arrest and the commencement of his trial. The state assigns docket overcrowding as its reason to justify the delay. "While docket congestion does not justify or excuse delay; *State* v. *Davis,* [supra, 742]; it is considered a neutral reason and is 'weighed less heavily against the state than purposeful delaying tactics.' *State* v. *Gasparro,* [supra, 100]. This reason must nonetheless be considered 'since the ultimate responsibility for such circumstances must rest with the government rather than the defendant.' *Barker* v. *Wingo,* supra, 531." *State* v. *Flowers,* 198 Conn. 542,

---

[4] Although Practice Book § 956B does not apply to this case, the alleged offenses having occurred prior to its effective date, July 1, 1983, we observe that under that rule the defendant's trial would have been required to commence within eighteen months from the filing of the information or arrest before July 1, 1985, and within twelve months thereafter.

These rules for speedy trial were adopted pursuant to the statutory mandate of General Statutes § 54-82*l.*

550–51, 503 A.2d 1172 (1986). "The state's explanation, its crowded docket, while not favored, still does not establish the defendant's case." *State* v. *Lloyd,* 185 Conn. 199, 209, 440 A.2d 867 (1981). Under the *Barker* test, the defendant must also establish that he asserted his right to a speedy trial and was prejudiced by the lack thereof. *Barker* v. *Wingo,* supra, 530.

The state maintains that the defendant's assertion of his right to a speedy trial was insufficient to prove that he was denied a speedy trial.[5] The defendant's assertion of this right by a motion to dismiss was not filed until nineteen months after his arrest. "This factor militates against the defendant's claim. The failure to assert the right, while not constituting a waiver, does make it difficult for the defendant to prove that he was denied a speedy trial. *Barker* v. *Wingo,* supra, 528, 531–32." *State* v. *Johnson,* supra, 545. On September 6, 1983, one year after his arrest, the defendant was advised that his prosecution was on a "standby" basis, subject to a one and one-half hour notice to commence trial. Three months later, he was again given the status of "first ready" case, subject to a standby notice of two hours. On March 20, 1984, his was the "next ready" case to be tried. For the period of seven months between September 6, 1983, and March 20, 1984, the defendant was "officially" informed by the court, a most reliable source, that his trial was imminent. A motion to dismiss for lack of a speedy trial in that interval under those circumstances could not have been expected, at least for a reasonable

[5] The state observes that the defendant points to matters not included in the record to strengthen his claim of diligent assertion of his right to a speedy trial. This court may not speculate as to events which occurred off the record. *State* v. *Conrod,* 198 Conn. 592, 598, 504 A.2d 494 (1986). The defendant's claim is, therefore, reviewed " 'shorn of those "facts" which [he] seeks to add.' " *State* v. *Cooper,* 9 Conn. App. 15, 24, 514 A.2d 758 (1986).

time from the official notifications. In fact, however, the defendant was misled by the court for that period and for a reasonable time after March 20, 1984, into thinking that he would be put to trial shortly, and even expended about $700 for the issuance of subpoenas that expired sixty days after issuance. See General Statutes § 52-144 (form of subpoena). When the defendant realized that his "standby" and "first ready" assignments on the trial docket were meaningless after relying upon the state's official representations for over seven months, on March 31, 1984, he properly prepared for the first time a motion to dismiss for lack of a speedy trial, which he filed for the first time on April 9th, 1984. Furthermore, this motion to dismiss was itself delayed by the court for a ruling until July 23, 1984, and only after he had renewed the motion on July 9, 1984. Under these circumstances, it is reasonable to assume that the defendant acted reasonably and delayed the filing of his first motion to dismiss based on an inspired belief that the commencement of his trial was imminent. A defendant should not be penalized because of inaction on his part which was reasonably prompted by the court's repeated assurances, here in the form of imminent and hourly "standby" assignments for top priority of trial.

It is also significant that the defendant was not put to trial until April 30, 1985, thirteen months after he first asserted his right to a speedy trial by written motion. The defendant also filed two additional motions to dismiss protesting the lack of a speedy trial. This subsequent long delay under the circumstances here, in light of the defendant's repeated and forceful assertions, becomes even less excusable for those very reasons. "We count the defendant's assertion of his right heavily against the state . . . . " *State* v. *Flowers,* supra, 548–49.

The final *Barker* factor to be considered is prejudice caused by the delay. "Prejudice, in the context of a speedy trial claim, 'should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. The [United States Supreme Court] has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' *Barker* v. *Wingo,* supra, 532." *State* v. *Foshay,* 12 Conn. App. 1, 16, 530 A.2d 611 (1987). The defendant here was not incarcerated and makes no claim on appeal that his defense was affected by the delay in his prosecution. The only factor applicable to this case is, therefore, the interest of minimizing anxiety and concern of the defendant. The United States Supreme Court has stated that "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion and often hostility." *Barker* v. *Wingo,* supra, 533. Our Supreme Court has observed that prejudice of this nature "is unfortunately present in every case of pretrial delay." *State* v. *Flowers,* supra, 553. We emphasize, however, that the defendant's life was disrupted and he suffered inconvenience, embarrassment, loss of earnings, extended retention of counsel and the stigma of pending criminal charges during a thirty-two month delay in the prosecution of relatively minor criminal charges. We find the egregious conduct of the state in delaying the defendant's trial and day of judgment on such charges to be in the nature of harassment. The defendant, a self-employed gardener, was required to lose time from work for each court appearance. The defendant was also required to retain private counsel for his defense over an unduly long period, as well as to prepare subpoenas for witnesses several times, at substantial cost. We find it unjust and unfair that a per-

son accused of relatively minor offenses should be so burdened for thirty-two months. Present time standards for trial,[6] although not applicable here, support this conclusion.

An affirmative showing of actual prejudice is not essential in a speedy trial claim when the defendant is able to show that the other three *Barker* factors weigh heavily against the state. *State* v. *Flowers,* supra, 551–52. Therefore, even if we do not consider the unnecessary prolonged anxiety and concern suffered by the defendant to be of a convincing prejudicial nature, an affirmative showing of this prejudice would not be needed where, as here, the other three factors strongly implicate the state. The thirty-two month delay is substantial; the reason for the delay, court congestion, is not redounding to the state's credit; and the defendant's assertion of his right to a speedy trial weighs heavily in his favor. " 'The reason for dispensing with the prejudice requirement entirely when the other three factors point heavily toward a violation of speedy trial is deterrence; the prosecution should not be permitted to engage in inexcusable misconduct on the hope that the defendant will not be able to make out a case of [actual] prejudice. Where such misconduct has occurred, the state cannot complain that the legitimate interests of its criminal justice system, being pursued in good faith, are being sacrificed because of an honest mistake in a case in which no ultimate harm has been done.' *Turner* v. *Estelle,* 515 F.2d 853, 858 (5th Cir. 1975), cert. denied, 424 U.S. 955, 96 S. Ct. 1431, 47 L. Ed. 2d 361 (1976); see also *Gray* v. *King,* 724 F.2d 1199, 1204 (5th Cir.), cert denied, 469 U.S. 980, 105 S. Ct. 381, 83 L. Ed. 2d 316 (1984)." *State* v. *Flowers,* supra, 552.

In *State* v. *Cleary,* supra, we upheld the trial court's dismissal of robbery and larceny charges where the

---

[6] See footnote 4, supra.

state was not ready to proceed with a trial thirty-six months after the arrest and after five scheduled trial dates spanning a period of six months. Under those circumstances we stated: "It is unnecessary to decide whether the facts of this case warrant the conclusion that the defendant was deprived of his constitutional right to a speedy trial. It is only necessary to decide whether the state failed to prepare diligently for trial." Id., 353.

The defendant's prosecution was assigned for trial twenty-five times, twice in 1982, nine times in 1983, nine times in 1984 and five times in 1985. From September 6, 1983, twelve months after his arrest, his trial was in a standby ready or next ready trial status, but was not reached for trial until twenty months later. The record belies the state's claim that a congested court docket prevented the case from slipping from the "first ready" or "standby" trial status into the next available trial slot and courtroom between September 6, 1983 and April 30, 1985. Except for one brief continuance sought by the defendant, he was at all times ready, prepared and expecting to go to trial and judgment. Thirty-two months after the defendant was first arrested and charged with relatively minor offenses, his trial finally began. As it was so aptly stated in *State v. Cleary,* supra, "[t]he facts speak for themselves." The trial court erred in failing to grant the defendant's motion to dismiss the charges against him.

There is error, the judgment convicting the defendant of disorderly conduct and of interfering with an officer is set aside, and the case is remanded with direction to grant the defendant's motion to dismiss the charges against him for lack of a speedy trial.

In this opinion the other judges concurred.