## STATE OF CONNECTICUT *v.* MICHAEL CROWLEY (8166)

SPALLONE, LAVERY and CRETELLA, Js.

Argued May 1—decision released August 7, 1990

*Craig A. Raabe,* with whom, on the brief, was *Sally S. King,* for the appellant (defendant).

*Rita M. Shair,* deputy assistant state's attorney, with whom were *Michael Dearington,* state's attorney, and, on the brief, *John Waddock,* assistant state's attorney, for the appellee (state).

CRETELLA, J. The defendant appeals from a judgment of conviction rendered after a jury trial on the charge of selling narcotics in violation of General Statutes § 21a-277 (a). He claims that the trial court should not have prohibited him from impeaching a state's witness for bias and lack of credibility and should not have admitted highly prejudicial hearsay statements of a third party into evidence.

The jury could reasonably have found the following facts from the testimony presented at trial. On the morning of July 29, 1987, the defendant was selling heroin on Asylum Street in New Haven. Two plain clothed undercover agents assigned to the Statewide Narcotics Task Force, Detective Vaughn Maher and Officer Mark Consorte, drove into the neighborhood in a red Camaro. They stopped on Sylvan Avenue alongside an Hispanic man on a bicycle. A brief conversation ensued in which the unidentified man on the bicycle informed the officers that if they drove down Asylum Street, they would find a black man named "Mike" who could sell them some heroin, or "power" in the idiom of the street. The officers followed these instructions and spotted the defendant. When the officers parked their vehicle next to the defendant, he approached, and one of the officers asked for some power. The defendant retrieved a brown bag containing several glassine bags of heroin from the back of a nearby street sign. He asked how many glassine bags the officers wanted, and Maher responded that they wanted one. The defendant tendered one bag and accepted $30 in unmarked Narcotics Task Force funds in exchange. He was then arrested.

I

The defendant claims that the trial court should not have prohibited him from impeaching Maher for bias or prejudice. He maintains that he did not sell heroin to the two officers in the Camaro because he recognized Maher and knew him to be a police officer. Both Maher and the defendant were members of the New Haven police force in 1972.

The defendant sought to testify that he is disliked by members of the New Haven police force. In an offer of proof, the defendant stated that ill feelings toward him were engendered when he was acquitted of the charge of receiving a bribe as a police officer. After

severance from the police force, he was convicted of robbery and assault. The defendant claimed, in his offer of proof, that this latter incident further exacerbated bad feelings toward him since he had shot a New Haven police officer in the course of the robbery. The court sustained the state's objection to this evidence for lack of relevance. The court later excluded defense counsel's question as to whether the defendant had engaged in a shootout with the New Haven police department in 1973.

Also on direct examination, the defendant sought to testify as to his ouster from a block watch meeting held at a New Haven police station. The defendant was prepared to testify that Maher was among the policemen who escorted him from the building. The trial court excluded this evidence as well on the basis of lack of relevance.

The defendant claims that the court should not have excluded his testimony because it was highly probative of bias stemming from Maher's association with the New Haven police force. "Impeachment of a witness for bias is a matter of right." *State* v. *Shipman,* 195 Conn. 160, 163, 486 A.2d 1130 (1985). "[Evidence] tending to indicate malice or ill will toward another [is] generally admissible in situations where such states of mind are material. . . . The bias or prejudice of a witness may properly be shown either by cross-examination or by testimony of other witnesses. . . . [W]here no foundation has been laid by cross-examination of the witness who is under attack for bias or prejudice, the decision whether or not to admit impeaching [evidence] . . . lies within the judicial discretion of the court." (Citations omitted.) *State* v. *Mahmood,* 158 Conn. 536, 539–40, 265 A.2d 83 (1969); *Fairbanks* v. *State,* 143 Conn. 653, 657, 124 A.2d 893 (1956).[1]

[1] "In most jurisdictions a party is not permitted to impeach the credibility of a witness against him by introducing independent testimony of a state-

The record shows that the defendant did not lay a foundation for the impeachment of Maher for bias. We therefore review the trial court's action in excluding the proposed testimony for abuse of discretion. See *State* v. *Johnson,* 190 Conn. 541, 551, 461 A.2d 981 (1983). In *Johnson,* the defendant sought to show the bias of a former police chief, who was not a witness in the case. The defendant, himself a police officer, argued that the police chief and the victim were "working together to incriminate him." Id., 550. The Supreme Court held that it was not an abuse of discretion for the trial court to exclude this testimony as irrelevant. Similarly, the defendant in the present case presented the argument that Maher and Consorte had conspired against him. Even if the defendant had been allowed to attempt to impeach Maher for bias, there was no evidence of bias on the part of Consorte, who was a member of the Hamden police department. "It is a reasonable exercise of judicial discretion to exclude . . . evidence the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated on vital issues of the case." (Citations omitted.) *State* v. *Moynahan,* 164 Conn. 560, 589, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973).

## II

The defendant's second claim is that his right to impeach Maher was improperly restricted when the trial court excluded questions concerning whether Maher was trained in techniques of deception as an undercover narcotics officer. The defendant argues that

ment or act of the witness which shows his bias or prejudice, without laying a foundation for the testimony by calling the attention of the witness to the statement or act alleged to show bias or prejudice, and thus giving him an opportunity to explain it." Annot., Necessity of Laying Foundation for Evidence Showing Bias or Prejudice of Witness, 16 A.L.R. 984 (1921).

Maher's enhanced ability to deceive is relevant to his credibility as a witness. In support of his claim, the defendant cites the well settled proposition of law that a witness may be impeached by specific acts of misconduct that evidence a lack of veracity. See *State* v. *Avis*, 209 Conn. 290, 305, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 130 L. Ed. 2d 937 (1989). The defendant does not argue that Maher's activities as an undercover agent constituted misconduct.

The theory of the defendant was that because Maher was able to deceive drug dealers that he was a drug buyer and not an undercover officer, he had the ability to also deceive the jury with his testimony about the events that transpired.

The comments and discussion by the court concerning this unique and novel approach to witness impeachment appear to reflect that the court viewed the same with incredulity as do we. The evidence was properly excluded.

### III

The defendant's final claim is that the court should not have admitted certain highly prejudicial hearsay statements of a third party into evidence. The facts relevant to this claim are as follows. On direct examination of Maher, the state sought to elicit testimony that a Hispanic man on a bicycle on Sylvan Street had informed the undercover officers that if they drove around the corner to Asylum Avenue, they would meet a man named Mike in a red hat who would be able to sell them power. Upon objection, the court ruled that this testimony was inadmissible hearsay.

Thereafter, defense counsel commenced to cross-examine Maher about factual details of the officers' encounter with the defendant on Asylum Avenue. Maher testified that after they pulled the Camaro over

to the side of the road near the defendant, a fifteen to twenty second conversation took place. Defense counsel then asked, "What did you say to that person [the defendant] during that 15 to 20 [second] conversation?" to which Maher replied, "He asked what we were looking for. I responded by telling him that a Latin male at the corner had stopped us and told us that we could purchase the narcotic labeled as power from him."

On redirect, the state questioned Maher as to the details of his encounter with the Hispanic male on the bicycle. Defense counsel objected to Maher's testimony on this matter on the basis of hearsay, but the trial court ruled that the defendant's question during cross-examination had opened the door. We agree. "[A] party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject." *State v. Graham,* 200 Conn. 9, 13, 509 A.2d 493 (1986); *State v. Aleksiewicz,* 20 Conn. App. 643, 656, 569 A.2d 567 (1990).

The judgment is affirmed.

In this opinion the other judges concurred.