LAWRENCE J. PELLETIER, JR. *v.* WARDEN
(11479)

DUPONT, C. J., DALY and FREEDMAN, Js.

Argued April 30—decision released July 13, 1993

*Lori Welch-Rubin,* special public defender, for the appellant (petitioner).

*Margaret Gaffney Radionovas,* deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Eva B. Lenczewski,* assistant state's attorney, for the appellee (respondent).

FREEDMAN, J. The petitioner appeals from the judgment of the trial court dismissing his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the record supports his claim that the

ineffective assistance of trial and appellate counsel deprived him of his constitutional right to a speedy trial.[1] We affirm the judgment of the trial court.

On April 16, 1979, three security guards were shot to death at the Purolator Armored Car garage in Waterbury. More than $1.7 million in cash, jewelry, food stamps and checks was missing. The following day, the petitioner and others, including Donald Couture, were arrested. The petitioner was arraigned on an information charging three counts of capital felony in violation of General Statutes § 53a-54b and one count of robbery in the first degree in violation of General Statutes § 53a-134. Pretrial bond was set at $750,000. The petitioner has remained incarcerated since his April 17, 1979 arrest.

On June 4, 1979, a grand jury was convened. On June 6, 1979, the grand jury returned a true bill against the petitioner on three counts of felony murder in violation of General Statutes § 53a-54c.

On June 25, 1980, the petitioner filed a pro se motion for appointment of new counsel based, in part, on his concern that trial counsel had not filed speedy trial motions as the petitioner had requested. The petitioner withdrew his motion on July 24, 1980, after counsel promised, among other things, that he would pursue the petitioner's right to a speedy trial. No motion was ever filed by trial counsel regarding the petitioner's constitutional right to a speedy trial.

On February 18, 1981, the petitioner was sentenced to a ninety day term of imprisonment in a different judi-

---

[1] The petitioner, throughout his brief, makes passing references to his state *statutory* right to a speedy trial. We treat that claim as abandoned, however, because the petitioner has not briefed and analyzed that claim separately. *Garrity* v. *McCaskey,* 223 Conn. 1, 2–3 n.3, 612 A.2d 742 (1992); *State* v. *Ephraim,* 28 Conn. App. 306, 309 n.4, 610 A.2d 1320, cert. denied, 223 Conn. 925, 614 A.2d 828 (1992).

cial district for an unrelated offense. By letter dated February 23, 1981, the petitioner's trial counsel informed the petitioner that "[w]e filed speedy trial motions in all your cases[2] which were granted by the court and the trial to be reached in the normal course."[3] No such motion, however, had been filed in the Purolator case.

On March 5, 1981, the petitioner filed a pro se notice and request for final disposition pursuant to General Statutes § 54-82c.[4] At an April 7, 1981 hearing, the trial

[2] The petitioner apparently had several criminal cases pending in the Superior Court at that time. Only the Purolator case, however, is the subject of this habeas action.

[3] Counsel's letter responded to the petitioner's letter of February 18, 1981, requesting that speedy trial motions be filed in order to dispose of those cases within 120 days. That time frame appears in General Statutes § 54-82c. See footnote 4. Counsel's letter provided the petitioner with a copy of § 54-82c and advised him to make a proper request for speedy disposition in conformity with the statutory requirements.

[4] General Statutes § 54-82c provides: "(a) Whenever a person has entered upon a term of imprisonment in a correctional institution of this state and, during the continuance of the term of imprisonment, there is pending in this state any untried indictment or information against such prisoner, he shall be brought to trial within one hundred twenty days after he has caused to be delivered, to the state's attorney or assistant state's attorney of the judicial district or geographical area, in which the indictment or information is pending, and to the appropriate court, written notice of the place of his imprisonment and his request for final disposition to be made of the indictment or information. For good cause shown in open court, the prisoner or his counsel being present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden, community correctional center administrator or other official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the parole board relating to the prisoner.

"(b) The written notice and request for final disposition referred to in subsection (a) hereof shall be given or sent by the prisoner to the warden, community correctional center administrator or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

"(c) The warden, community correctional center administrator or other official having custody of the prisoner shall promptly inform him in writ-

court brought up the subject of the petitioner's statutory speedy trial request. Noting "lengthy motions that have been filed" and arguing that the petitioner should not "have his cake and eat it too," the state's attorney requested that the trial court extend the 120 day period set forth in the statute. The petitioner's counsel objected to the state's request. After observing that nearly 100 motions had been filed in the petitioner's case and over 100 had been filed in the case involving his codefendant Couture, and noting that "voluminous work . . . remains to be done before the cases are ready for trial," the court found "good cause to grant an urgently necessary and reasonable continuance" until October 1, 1981.[5]

Jury selection for the joint trial of the petitioner and Couture began on September 29, 1981. Jury selection continued on sixteen separate dates thereafter, concluding on November 5, 1981. The presentation of evidence began on November 12, 1981, and ended on January 8, 1982. On January 19, 1982, the jury found the petitioner and Couture guilty as charged in the

ing of the source and contents of any untried indictment or information against him concerning which the warden, administrator or other official has knowledge and of his right to make a request for final disposition thereof.

"(d) Escape from custody by the prisoner subsequent to his execution of the request for final disposition referred to in subsection (a) hereof shall void the request."

[5] The trial court granted the continuance until October 1, for the purpose of addressing pretrial motions, notwithstanding the fact that the state's attorney opined that August 1 would provide adequate time to prepare the case for trial. As the docket sheet shows, the additional two months were necessary to resolve other pretrial motions.

Additionally, although the court, on September 22, 1981, extended the statutory speedy trial deadline to December 1, 1981, jury selection ultimately began on September 29, two days before the expiration of its original deadline.

Finally, we note that, by virtue of its short duration, the petitioner's ninety day term of imprisonment would not have permitted him successfully to invoke General Statutes § 54-82c. See *State* v. *Harris,* 14 Conn. App. 244, 249–50, 540 A.2d 395 (1988).

indictment, of all three counts of felony murder. The court subsequently sentenced the petitioner to three consecutive terms of imprisonment of twenty-five years to life, for a total effective sentence of not less than seventy-five years and not more than life.

On April 23, 1985, our Supreme Court, relying on its decision in the companion case of *State* v. *Couture,* 194 Conn. 530, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985), set aside the judgment and ordered a new trial because "the summation by the prosecutor . . . violated the defendant's right to due process of law under the fourteenth amendment to the United States constitution and under article first, § 8 of the Connecticut constitution." *State* v. *Pelletier,* 196 Conn. 32, 34, 490 A.2d 515 (1985).[6]

After remand by our Supreme Court, the petitioner filed a motion to dismiss the indictment on double jeopardy grounds. After the court denied the motion, the petitioner appealed. On October 1, 1985, our Supreme Court dismissed the petitioner's interlocutory appeal.

On June 16, 1986, the petitioner's case was severed from that of his codefendant, Couture. On June 30, 1986, the petitioner filed a pro se motion for appointment of new counsel based, in part, on his concern that trial counsel had not pursued matters in a speedy fashion. On July 14, 1986, the court granted the motion, appointed new counsel to represent the petitioner and informed the petitioner that "[m]aybe the day after Labor Day we will begin picking the jury." The petitioner indicated that he was satisfied with this proposed schedule.

---

[6] With respect to the claim of prosecutorial misconduct, our Supreme Court concluded that "the prosecutor's prepared remarks were deliberate, facially improper, persistent and pronounced. . . . [I]n his opening summation the prosecutor's character assassination of [Couture and Pelletier] so tainted the trial as to deny [them] due process of law." *State* v. *Couture,* 194 Conn. 530, 564, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

On July 25, 1986, a trial schedule was set. The Couture trial was to commence on September 3, 1986, with the petitioner's trial to commence thereafter. On August 4, and again on September 4, 1986, the petitioner's new trial counsel was granted an extension until September 19, 1986, to file pretrial motions. On September 19, the petitioner's counsel filed six motions.

On September 8, 1986, Couture's second trial began. On November 10, 1986, a mistrial was declared in Couture's case.

On November 12, 1986, jury selection began in the petitioner's second trial after the court denied the petitioner's oral motion for an indefinite continuance or, alternatively, a change of venue due to publicity from the Couture case. Jury selection continued until January 8, 1987. The presentation of evidence began on January 13, 1987, and concluded on January 30, 1987. On February 2, 1987, the jury found the petitioner guilty of all three counts of felony murder. The court subsequently sentenced the petitioner to a total effective term of imprisonment of seventy-five years to life. This second conviction was affirmed by our Supreme Court. *State* v. *Pelletier,* 209 Conn. 564, 552 A.2d 805 (1989).

The petitioner subsequently challenged his conviction in this habeas corpus proceeding. In his petition for a writ of habeas corpus, the petitioner claimed that he was denied the effective assistance of counsel.[7] The petitioner claimed that trial and appellate counsel in proceedings related to his *first* trial failed to protect

---

[7] In the habeas court, the petitioner also attacked his conviction on due process and equal protection grounds. With regard to these claims, the habeas court found that "the petitioner neither alleged nor proved a lack of deliberate bypass of direct appeal of these issues, and, therefore, habeas corpus review is unavailable." The petitioner does not challenge this ruling on appeal.

adequately his right to a speedy trial guaranteed by the sixth amendment to the United States constitution[8] and article first, § 8, of the Connecticut constitution.[9] The petitioner also claimed that trial and appellate counsel in proceedings related to his *second* trial failed to protect adequately his speedy trial rights. The petitioner elected to submit these claims to the habeas court on stipulated facts and exhibits. No testimony was elicited.

"[O]ur Supreme Court has adopted the two-pronged test for ineffectiveness of counsel set forth by the United States Supreme Court in *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The test requires a conclusive showing that (1) the attorney's performance was so deficient and the errors made by counsel were so egregious that the attorney was not functioning as counsel; id., 687; and (2) there exists 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' Id., 694." *Ostolaza* v. *Warden,* 26 Conn. App. 758, 761, 603 A.2d 768, cert. denied, 222 Conn. 906, 608 A.2d 692 (1992). "Thus, a habeas corpus petitioner seeking to establish such ineffectiveness must prove both deficient performance

---

[8] The sixth amendment to the United States constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." This guarantee of a speedy trial is a fundamental right applicable to the states through the fourteenth amendment to the United States constitution. *Klopfer* v. *North Carolina,* 386 U.S. 213, 223, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967).

[9] Article first, § 8, of the Connecticut constitution provides in pertinent part that "in all prosecutions by indictment or information [the accused shall have a right] to a speedy, public trial . . . ."

Although the petitioner relies on both the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution, he offers no separate analysis of the Connecticut constitution as a basis for different treatment of the federal and state speedy trial claims. We decline to undertake such analysis. *State* v. *Foshay,* 12 Conn. App. 1, 14 n.10, 530 A.2d 611 (1987).

and prejudice resulting therefrom." *Bunkley* v. *Commissioner,* 222 Conn. 444, 455, 610 A.2d 598 (1992).[10]

The habeas court did not address the question of counsel's performance. Instead, it focused on whether the petitioner had shown a reasonable probability that the charges against him would have been dismissed for lack of a speedy trial at any stage or level of the proceedings. "A court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice." *Nardini* v. *Manson,* 207 Conn. 118, 124, 540 A.2d 69 (1988). The habeas court confined its analysis to the prejudice prong of the *Strickland* inquiry in evaluating the petitioner's claims of ineffective assistance of trial and appellate counsel in protecting his speedy trial rights. We will do the same.

"The Supreme Court of the United States and [the Connecticut Supreme Court] have identified four factors which form the matrix of [a] defendant's constitutional right to speedy adjudication: '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' *Barker* v. *Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State* v. *Lloyd,* 185 Conn. 199, 208, 440 A.2d 867 (1981); *State* v. *Nims,* 180 Conn. 589, 591, 430 A.2d 1306 (1980). A balancing test is to be applied on a case by case basis. None of the factors standing

---

[10] Because a criminal defendant who proves his claim of the denial of his right to a speedy trial is entitled to the extreme remedy of dismissal of the charges against him; *Gaines* v. *Manson,* 194 Conn. 510, 516–17, 481 A.2d 1084 (1984); the prejudice analysis for the claim of ineffective assistance of trial counsel and for the claim of ineffective assistance of appellate counsel is the same in the context of a claimed failure to protect a defendant's speedy trial rights: is there a reasonable probability that, but for counsel's unprofessional errors, the charges against the petitioner would have been dismissed?

alone demands a set disposition; rather it is the total mix which determines whether the defendant's right was violated. *State* v. *Nims,* supra, 591–92." *State* v. *Johnson,* 190 Conn. 541, 544–45, 461 A.2d 981 (1983); *State* v. *Foshay,* 12 Conn. App. 1, 13–14, 530 A.2d 611 (1987). Our consideration of the facts of the present case in light of the four *Barker* factors leads us to conclude, as did the habeas court,[11] that the petitioner has not met his burden of proving that, but for the performance of counsel, there exists a reasonable probability that the charges against him would have been dismissed for lack of a speedy trial at any stage or level of the proceedings.

## I

### PETITIONER'S FIRST TRIAL

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker* v. *Wingo,* supra, 530. The protection afforded

---

[11] In addition to arguing that the judgment of the habeas court should be reversed and the case remanded with direction to grant a writ of habeas corpus, the petitioner contends: "Because the habeas court made no independent examination of the first three *Barker* [v. *Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)] factors, but rather focused solely on its finding of an absence of actual prejudice, the petitioner has been denied a full and fair review of his claim that ineffective assistance of counsel deprived him of his constitutional rights to a speedy trial."

Our reading of the habeas court's memorandum of decision, however, leads us to the conclusion that the habeas court gave careful consideration to both the prejudice factor and the reason for the delay factor of the *Barker* inquiry. When both of these factors are resolved against the accused, it cannot be said that the pretrial delay violates the constitutional right to a speedy trial, which is intended to prevent delay that is "purposeful or oppressive." *Pollard* v. *United States,* 352 U.S. 354, 361, 77 S. Ct. 481, 1 L. Ed. 2d 393 (1957); see *State* v. *Brown,* 172 Conn. 531, 538, 375 A.2d 1024, cert. denied, 434 U.S. 847, 98 S. Ct. 153, 54 L. Ed. 2d 114 (1977). Consequently, we reject the petitioner's claim that the habeas court did not fully or fairly review his claim of ineffective assistance of counsel.

the petitioner by the constitutional speedy trial guarantee was activated on April 17, 1979, when he was arrested. *Dillingham* v. *United States,* 423 U.S. 64, 96 S. Ct. 303, 46 L. Ed. 2d 205 (1975); *State* v. *Foshay,* supra, 14. Voir dire examination of jurors began on September 29, 1981. For speedy trial purposes, trial is said to commence when voir dire begins. *United States* v. *Gonzalez,* 671 F.2d 441, 444 (11th Cir.), cert. denied, 456 U.S. 994, 102 S. Ct. 2279, 73 L. Ed. 2d 1291 (1982); see also *United States* v. *Fox,* 788 F.2d 905 (2d Cir. 1986). The delay of nearly thirty months is certainly sufficiently long to warrant further inquiry. "[Our] Supreme Court and this court have found that similar delays, while not sufficient in themselves to establish a speedy trial violation, were sufficient to warrant inquiry into the other *Barker* factors. See, e.g., *State* v. *Gasparro,* [194 Conn. 96, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985)] (three and one-half years); *State* v. *Davis,* 192 Conn. 739, 474 A.2d 776 (1984) (twenty-six months); *State* v. *Cleary,* 3 Conn. App. 349, 488 A.2d 831 (1985) (thirty-six months)." *State* v. *Almgren,* 12 Conn. App. 364, 369, 530 A.2d 1089 (1987) (thirty-two months).

Application of the *Barker* balancing test next requires a consideration of the reasons for the delay. The petitioner claims that the delay in the commencement of his first trial was largely attributable to the failure of the court to meet its constitutional obligation to provide him with a speedy trial. Specifically, the petitioner points to the following, which he contends indicates the trial court's indifference, if not its hostility, toward the interests of speedy justice: (1) the trial court granted the state an extension of time, for speedy trial purposes, greater than what it had requested; (2) the trial court did not resolve pending motions promptly; and (3) the trial court made certain remarks regarding the petitioner's speedy trial rights. The state, on the other

hand, contends that most, if not all, of the delay here was justifiable because it was largely attributable to "the magnitude and complexity of the case and the concomitant need for the [petitioner] to file numerous [pretrial] motions in order . . . adequately [to] prepare a defense." We agree with the state.

The petitioner's trial involved a prosecution of extreme complexity involving serious charges and multiple defendants. The seriousness and complexity of the criminal charges involved are appropriate considerations in evaluating the reasons for the delay. *Barker* v. *Wingo,* supra, 531; *United States* v. *DeLuna,* 763 F.2d 897, 922 (8th Cir.), cert. denied sub nom. *Thomas* v. *United States,* 474 U.S. 980, 106 S. Ct. 382, 88 L. Ed. 2d 336 (1985); see *State* v. *Almgren,* supra, 374. In this context, it is not surprising that most, if not all, of the pretrial delay was consumed by the trial court's consideration of an extremely large number of motions, many of them filed by the petitioner. It is a valid reason for delay that a reasonable amount of time was taken to rule on the petitioner's numerous pretrial motions. *United States* v. *Jones,* 524 F.2d 834, 850 (D.C. Cir. 1975); *United States* v. *Auerbach,* 420 F.2d 921, 924 (5th Cir. 1969), cert. denied, 399 U.S. 905, 90 S. Ct. 2195, 26 L. Ed. 2d 560 (1970); see also *State* v. *Brown,* 172 Conn. 531, 538, 375 A.2d 1024, cert. denied, 343 U.S. 847, 98 S. Ct. 153, 54 L. Ed. 2d 114 (1977). In evaluating the trial court's pretrial actions, we are mindful that "in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself." *United States* v. *Ewell,* 383 U.S. 116, 120, 86 S. Ct. 773, 15 L. Ed. 2d 627 (1966). Neither the trial court's extension of time

granted to the state in April, 1981, nor the time involved in its consideration of pending motions or its remarks on the record indicates to us anything that suggests that it did not take seriously its obligation to move the petitioner's case to trial. Consequently, because there is nothing in the record to suggest that the petitioner's first trial did not proceed with anything but "orderly expedition"; *Smith* v. *United States,* 360 U.S. 1, 10, 79 S. Ct. 991, 3 L. Ed. 2d 1041 (1959); this factor does not weigh in favor of the petitioner.

Our consideration of the third *Barker* factor, namely, whether the petitioner vigorously asserted his constitutional right to a speedy trial, cannot logically be separated from the fact that the petitioner claims that counsel's failure to make his speedy trial demand known to the court amounted to the ineffective assistance of counsel. Cf. *State* v. *Milton,* 26 Conn. App. 698, 714–15, 603 A.2d 750, appeal dismissed, 224 Conn. 163, 617 A.2d 460 (1992). Notwithstanding this impediment to our full consideration of this factor, there is sufficient information in the record from which it may be concluded that the petitioner had requested and legitimately expected that counsel was pursuing enforcement of his constitutional rights to a speedy trial. Consequently, for purposes of our analysis, we consider this factor to weigh in favor of the petitioner.

The final *Barker* factor that we must consider is prejudice caused by the delay. Our Supreme Court has observed that "the linchpin of the speedy trial claim is a showing of prejudice . . . ." *State* v. *Lloyd,* supra, 209. Prejudice may be actual or presumed; a showing of actual prejudice may not be required at all where other factors weigh heavily against the state. *State* v. *Flowers,* 198 Conn. 542, 551–52, 503 A.2d 1172 (1986); *State* v. *Almgren,* supra, 373. Because the first three factors do not weigh strongly in the petitioner's favor, he is not excused from the requirement of showing prej-

udice. *State* v. *L'Heureux,* 166 Conn. 312, 320, 348 A.2d 578 (1974); *State* v. *Foshay,* supra, 16.

Prejudice in the context of a speedy trial claim "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. [The United States Supreme Court] has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; (iii) to limit the possibility that the defense will be impaired." *Barker* v. *Wingo,* supra, 532. Of these, the Supreme Court has pointed out, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id.

The petitioner, however, focuses his claim on only the first two types of prejudice implicated by pretrial delay.[12] He claims that the conditions of his pretrial

---

[12] Although neither party has brought it to our attention, last year in *Doggett* v. *United States,* U.S. , 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992), the United States Supreme Court refined its assessment of presumptive prejudice under the *Barker* inquiry. The *Doggett* case focused primarily on the third type of prejudice implicated by pretrial delay, namely, the impairment of the accused's defense due to unreasonable pretrial delay. Id., 2692–94. The *Doggett* court found a speedy trial violation where the lag between indictment and arrest was eight and one-half years, of which six years were due to government negligence in not vigorously pursuing Doggett's apprehension. Although Doggett failed to make any affirmative showing that the delay weakened his ability to present a defense, the court concluded that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify"; id., 2693; and that therefore the importance of presumptive prejudice in the *Barker* mix increases with the length of the delay and the culpability of the government in causing the delay. Id.

For the reasons that follow, however, we conclude that *Doggett* is not applicable to the circumstances of this case. First, *Doggett* may be limited to its peculiar facts, which involve a substantial delay between Doggett's indictment, of which he was unaware, and his arrest, a time period during which delay is particularly likely to cause difficulty in ways that an accused may be unable to prove or, for that matter, identify. Second, *Doggett's* specific focus is on a type of prejudice not claimed by the petitioner in this case. Third, even if *Doggett* is read broadly as an expansion of all aspects

incarceration and the accompanying limit on his ability to communicate with family and friends who may have been able to render assistance and offer comfort, as well as the uncertainty of when and how the charges against him would be resolved, all establish sufficient prejudice to tilt this factor heavily in his favor. His claim of prejudice, however, is not sufficiently grave to rise to the level of a constitutional violation when considered with the other *Barker* factors. "While prejudice in the nature of that asserted here is unfortunately present in every case of pretrial delay, general claims of anxiety are thought insufficient to invoke what has been termed 'the unsatisfactorily severe remedy of dismissal.' . . . " (Citations omitted.) *State* v. *Flowers,* supra, 553; *State* v. *Foshay,* supra, 16–17; compare *United States* v. *Simmons,* 536 F.2d 827, 831–32 (9th Cir.), cert. denied, 429 U.S. 854, 97 S. Ct. 148, 50 L. Ed. 2d 130 (1976) (nothing in record that distinguished emotional strain experienced by defendant from that of other criminal defendants) with *United States* v. *Dreyer,* 533 F.2d 112, 116–17 (3d Cir. 1976) (record contained evidence to support claim of grave personal prejudice due to pretrial delay).

The application of the principles of *Barker* v. *Wingo,* supra, to the facts and circumstances surrounding the petitioner's first trial, therefore, leads us to the conclusion that, even if trial and appellate counsel had pursued the petitioner's speedy trial rights, the charges against him would not have been dismissed. Accordingly, his claim of ineffective assistance of trial and appellate counsel with respect to that proceeding must fail.

of an accused's claim of presumptive prejudice due to pretrial delay, the facts of the delay surrounding the petitioner's first trial, particularly with respect to the length of the delay and the reason for the delay, fall far short of those present in *Doggett.*

## II

### Petitioner's Second Trial

We turn now to an application of the *Barker* factors in the context of the petitioner's second trial. The petitioner was granted a new trial on April 23, 1985, and was not retried until November 12, 1986. This eighteen month period was certainly sufficiently long to warrant inquiry into the other *Barker* factors. See *State* v. *Brown,* supra, 536; *State* v. *Foshay,* supra, 14.

The petitioner correctly points out that there were more than seven years between his arrest and his second trial. We must, therefore, determine whether the time between his arrest and the reversal of his first conviction should also be factored into our speedy trial analysis regarding his second trial.

Because the constitutional right to a speedy trial is intended to prevent delay that is "purposeful or oppressive"; *Pollard* v. *United States,* 352 U.S. 354, 361, 77 S. Ct. 481, 1 L. Ed. 2d 393 (1957); the *reason* for the additional delay due to the necessity of a retrial is critical to our resolution of this inquiry. Because we have already concluded that there is nothing in the record to suggest that the petitioner's first trial did not proceed with anything but orderly expedition, it necessarily follows, in our view, that the period between the petitioner's arrest and his first conviction should not be counted against the state in examining the delay incident to the petitioner's second trial, *unless* the trial error that necessitated the second trial occurred for the purpose of delay. See *United States* v. *Ewell,* supra, 120–23 (no oppressive or culpable governmental conduct inhering in facts surrounding retrial of defendant); cf. *United States* v. *Jackson,* 508 F.2d 1001, 1005 (7th Cir. 1975) (interlocutory appeal by prosecution is generally a valid reason for delay, provided it has not been

taken "in bad faith or for the sole purpose of delay"). Although the petitioner, in his brief, draws our attention to "the prosecutor's deliberately inflammatory and improper summation during the petitioner's first trial"; see footnote 6, supra; there is nothing in the record to suggest that the prosecutorial misconduct that deprived the petitioner of a fair trial in that first prosecution was in any way motivated by a desire to cause additional delay or otherwise impair the petitioner's speedy trial rights. Under these circumstances, we confine our analysis of the delay incident to the petitioner's second trial to an application of the *Barker* factors to the period of time following the reversal of his first conviction.

*Barker* therefore requires that we next consider the reason for the delay in bringing the petitioner to trial a second time. The eighteen month delay after remand for a new trial can be divided into three segments, each of which has a different cause. The period of delay, from May 7 to October 1, 1985, is attributable to the petitioner's motion to dismiss on double jeopardy grounds and his interlocutory appeal from the denial of that motion, which appeal was ultimately dismissed by our Supreme Court. This period of delay is therefore attributable to the petitioner. See *United States* v. *Loud Hawk,* 474 U.S. 302, 316–17, 106 S. Ct. 648, 88 L. Ed. 2d 640 (1986); *United States* v. *Auerbach,* supra. The next period of delay, from October 1, 1985, to June 30, 1986, is not as easily explained. The docket sheet shows no activity in either the petitioner's case or Couture's case during this period until June 11, 1986, when Couture filed a motion to sever the trial of the two cases. Neither the petitioner nor the respondent has offered an explanation for the delay during this period of almost nine months. Ultimate responsibility for such unexplained delay, however, must rest with the government rather than with the petitioner because it is the govern-

ment's affirmative obligation to bring the matter to trial promptly. See *Barker* v. *Wingo,* supra, 531; *United States* v. *New Buffalo Amusement Corporation,* 600 F.2d 368, 377–78 (2d Cir. 1979); *United States* v. *Mann,* 291 F. Sup. 268, 274–75 (S.D.N.Y. 1968); *State* v. *Davis,* 192 Conn. 739, 742–43, 474 A.2d 776 (1984). The final period of delay, from June 30 to November 12, 1986, when the petitioner's second trial commenced, is attributable to the appointment of new counsel for the petitioner at his request, to additional pretrial motions filed by new counsel and to the trial of Couture following severance. Each of these is a valid reason for pretrial delay. See *United States* v. *Jones,* supra; *United States ex rel. Stukes* v. *Shovlin,* 329 F. Sup. 911, 917–18 (E.D. Pa. 1971), aff'd, 464 F.2d 1211 (3d Cir. 1972); *State* v. *Mooney,* 218 Conn. 85, 118–20, 588 A.2d 145, cert. denied, U.S. , 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). On the whole, the delay incident to the petitioner's second trial presents a mixture of valid reasons, along with a period of time for which no explanation appears. For this reason, the second *Barker* factor should weigh slightly in the petitioner's favor.

As noted above, our consideration of the third *Barker* factor, namely, whether the petitioner vigorously asserted his constitutional right to a speedy trial, cannot logically be separated from the fact that the petitioner claims that counsel's failure to assert his speedy trial right amounted to the ineffective assistance of counsel. As was the case with his first trial, there is sufficient information in the record for us to conclude that the petitioner apprised the court in June, 1986, of his concerns regarding the speed with which his case was proceeding toward retrial. This, along with his previous speedy trial requests, pushes this factor to weigh in favor of the petitioner.

Although the first three *Barker* factors weigh more strongly in the petitioner's favor with regard to a speedy trial claim upon retrial than they did with regard to such a claim during his first trial, they do not weigh so strongly as to excuse him from the requirement of showing prejudice. See *State* v. *Mooney,* supra; *State* v. *L'Heureux,* supra; *State* v. *Foshay,* supra. The habeas court correctly concluded that this is not a case like *State* v. *Almgren,* supra, 373–74, where the state's inexcusable misconduct required the dismissal of charges on speedy trial grounds notwithstanding the lack of an affirmative showing of actual prejudice.[13] Under the circumstances of this case, by contrast, the petitioner's failure to show any actual prejudice is fatal to his assertion of a meritorious speedy trial claim.

We conclude, then, that the habeas court properly rejected the petitioner's claim of ineffective assistance of counsel in failing to safeguard and assert his constitutional speedy trial rights during the proceedings that led to his convictions and the subsequent appellate review of those convictions.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] For the reasons set forth in footnote 12, we conclude that *Doggett* v. *United States,* ___ U.S. ___, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992), is inapplicable to the circumstances surrounding the petitioner's second trial.