[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a petition requesting habeas corpus relief from allegedly unlawful confinement resulting from a judgment of CT Page 9001 conviction, after jury trial, for murder, conspiracy to commit murder, and assault first degree, for which the petitioner received a total, effective sentence of fifty years imprisonment. The petitioner claims that his incarceration is unlawful because his trial attorney, provided ineffective assistance.
The court finds the following facts. On the evening of May 12, 1987, Thomas Dixon and Barrington Solomon were sitting on the rear porch of a tenement, located at 102 to 104 Enfield Street, Hartford, when Dixon was shot and killed and Solomon was shot and seriously wounded by two, brief bursts of gunfire. The petitioner and Michael Walker were arrested for those shootings and each was convicted of the crimes arising from those shootings at separate trials. The petitioner was represented by a special public defender, Attorney William Collins, and the petitioner's trial preceded Walker's.
At the petitioner's criminal trial, Lehman Brown, then seventeen years of age, testified that on the evening in question he was visiting his girlfriend, Dion Smith, at her apartment on the second floor of 98 to 100 Enfield Street, Hartford, which building was next door to 102 to 104 Enfield Street. During the early evening, Brown stepped out onto the rear porch adjoining Smith's apartment. He then observed two men skulking around in the rear yards of these addresses. One of the men carried a firearm which had a long barrel. Brown recognized the two men as the petitioner and Walker. Brown saw the petitioner run to a fence dividing the yards and fire shots from the weapon toward the victims. The petitioner and Walker then ran to a tree, and the petitioner handed the weapon to Walker who fired a second volley of shots at the victims. The petitioner and Walker then went through a fence toward Garden Street.
Brown did not immediately communicate his observations to the police. At the time of the shootings, Brown himself was facing sentencing for a violation of probation and was awaiting trial in a robbery case. A few weeks after the incident, Brown discussed his observations of the incident with the attorney who was representing him in one of his criminal cases. Shortly after this discussion, Brown went to the police with this information.
At the petitioner's criminal trial, Brown's version of events was corroborated, in part, by two, independent witnesses, Nadine Collier and Regina Tillis. They resided on Garden Street adjacent to the area into which Brown indicated the assailants had fled. CT Page 9002 These witnesses also identified the petitioner and Walker as the persons they saw carrying a gun and fleeing from the area of the shootings. Also, Brown's testimony regarding the two locations from which the shots were fired was corroborated by the discovery, by the police investigating the shooting, of expended cartridge shells at those two locations. It was also established at the criminal trial that Walker had a motive for attacking Solomon because Solomon had shot and paralyzed Walker's brother. Further, it was established that Walker and the petitioner were frequent companions and that the petitioner assisted Walker in trafficking narcotics.
Solomon did not testify at either the petitioner's nor Walker's trial. While the cases were pending and with the knowledge of the state's attorney's office, Solomon returned to Jamaica. Solomon had intended to return to Connecticut to testify, but U.S. immigration authorities barred his reentry into the United States.
The petitioner was convicted and sentenced for those shootings as described above. On appeal, the petitioner's conviction was affirmed, State v. Fisher, 210 Conn. 619 (1989). The petitioner also filed a petition for a new trial which was denied, and the denial was affirmed on appeal, Fisher v. State, 33 Conn. App. 122
(1993).
At the habeas hearing evidence was produced demonstrating that during the pretrial stage of the petitioner's criminal case, Collins became aware, through the public defender's investigator, that the owner of 98 to 100 Enfield Street, Desrene Taylor, and her daughter, Antoinette Taylor, both of whom resided in the second floor apartment from which Brown claimed to have witnessed the shootings, had given statements that Brown's girlfriend, Smith, never rented nor resided at that apartment, and that neither Brown nor Smith were ever at the apartment (Petitioner's Exhibits B and E). Collins considered this information but decided it was unnecessary to call either person as a defense witness because he felt that he had sufficiently discredited Brown by his cross-examination of him and by presenting the testimony of Brown's mother who characterized her son as a liar.
Collins did want, however, to call Brown's girlfriend to testify. Despite the efforts of the public defender's investigator to locate her, Smith's whereabouts remained unknown at the time of trial. Consequently, Desrene and Antoinette Taylor and Dion Smith CT Page 9003 never testified at the petitioner's criminal trial.
Desrene Taylor testified at the habeas hearing and also at Walker's trial. Antoinette Taylor testified at Walker's trial, and a transcript of that testimony was introduced at the habeas hearing (Petitioner's Exhibit E). Dion Smith testified at Walker's trial, at the habeas hearing, and at the petitioner's hearing on his petition for a new trial, Fisher v. State, supra.
Our Supreme Court has adopted the two-pronged Strickland
test for evaluating ineffective assistance claims; Ostolaza v.Warden, 26 Conn. App. 758, 761 (1992). That test requires that the petitioner demonstrate, by a preponderance of the evidence, both that his counsel's performance was substandard and that there exists a reasonable probability that, but for counsel's deficiencies, the outcome of the proceedings would have been different. Id.
A habeas court need not address the question of counsel's performance if it is easier to dispose of an ineffective assistance claim on the ground of insufficient prejudice, Pelletier v.Warden, 32 Conn. App. 38, 46 (1993). Because the court feels that an analysis of the prejudice component of the Strickland standard is dispositive, the court proceeds to that issue directly.
In order to satisfy the prejudice prong of the Strickland
test, the petitioner must prove, by a preponderance of the evidence, that there exists a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different, Levine v. Manson, 195 Conn. 636, 640
(1985). Reasonable probability means a probability sufficient to undermine confidence in the verdict, Bunkley v. Commissioner,222 Conn. 444, 454 (1992).
The court's task then is to determine whether the absence of the testimony of Desrene and Antoinette Taylor and Dion Smith at the petitioner's criminal trial creates a reasonable probability that, but for this absence, the outcome of that trial would have been different. This issue is a close one. On the one hand, Brown was the crucial prosecution witness because he was the only witness who claimed to have seen the petitioner and Walker shoot the victims. His credibility on that point was determinative, and the testimony of the Taylors and Smith was likely to demonstrate that Brown prevaricated as to his vantage point on the rear porch of the second floor apartment at 98 to 100 Enfield Street. On the other CT Page 9004 hand, Brown's version of the shootings revealed an awareness of critical facts that only someone who had actually seen the shootings was likely to know.
The court finds itself in the unusual position of actually knowing how another jury reacted to Brown's testimony when that testimony was weighed and tested against the testimony of the Taylors and Smith. As noted above, the three witnesses missing from the petitioner's criminal trial did testify in Walker's criminal trial. Despite the contradictory evidence regarding Brown's location, the jury at Walker's trial chose to accept Brown's identification of Walker, and by virtue of their verdict on the conspiracy count, the petitioner as the assailant, State v.Walker, 214 Conn. 122 (1990). Every trial is unique, however, and the fact that Walker's jury followed one course fails to provide proof that it is likely that the jury in the petitioner's case would have done likewise. It does demonstrate, though, that the mere presence of this additional testimony does not guarantee acquittal for the petitioner.
Although it is a close question, the court finds that the petitioner has failed to meet his burden of proving, by a preponderance of the evidence, that there exists a reasonable probability that the outcome of his criminal trial would have been different if the Taylors and Smith had testified at that trial. Brown's credibility had already been cast under the shadow of doubt during his cross-examination. That cross-examination disclosed Brown's criminal history and the possibility that he might be trying to curry favor with the prosecution in order to obtain lenient treatment in his own matters; that Brown delayed communicating his eyewitness account to the police; and that Brown's in-court testimony strayed in some respects from the statement he originally gave to the police.
While it is likely the testimony of the Taylor's and Smith would have raised serious doubts regarding Brown's observation position, those doubts fail to erode the key factor that Brown was able to relate facts concerning the shootings that it is highly likely only an eyewitness could have known. Brown knew the precise locations from which the two fusillades of gunfire originated as established by the discovery of empty shells at these locations. He was able to describe the weapon fairly accurately when compared to the descriptions provided by other witnesses and evidence in the case. He also knew the escape route taken by the assailants as recounted by later witnesses, Collier and Tillis. CT Page 9005
It is axiomatic that the trier-of-fact may accept some of a witnesses's testimony even though it rejects other portions of that testimony as false. After carefully considering all the evidence presented in this case, including the transcript of the petitioner's criminal trial, the court finds that the jury at that trial was reasonably likely to reach the same verdict even with the additional testimony of the Taylors and Smith. The petitioner has failed to meet his burden of proving that there is a probability sufficient to undermine confidence in that verdict, Bunkley v.Commissioner, 222 Conn. 444, 459.[,] (1992).
For these reasons, the petition is dismissed.
Sferrazza, J.