[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a petition requesting habeas corpus relief from allegedly illegal confinement resulting from the petitioner's judgment of conviction, after jury trial, of the crimes of robbery in the first degree in violation of General Statutes § 53a-134
(a)(2); burglary in the first degree in violation of General Statutes § 53a-101(a)(1); attempted assault in the first degree in violation of General Statutes §§ 59(a)(1) and 53a-49(a)(2); and carrying a pistol without a permit in violation of General Statutes §§ 29-35 and 29-37(b).
Subsequently, the petitioner's convictions were affirmed by our Appellate Court, except for the violation of General Statutes §§ 29-35 and 29-37(b). State v. Hamilton, 30 Conn. App. 68 (1993). Following that, our Supreme Court affirmed the decision of the Appellate Court. State v. Hamilton, 228 Conn. 234 (1994).
The petitioner now attacks his convictions claiming that he was deprived of his state constitutional right to effective assistance of counsel by his attorney's failure to adequately investigate and offer evidence of an alibi defense, and counsel's failure to adequately investigate and offer evidence of a third party culprit defense.
As a factual background, the court finds that, on July 19, 1990, between 10:00 P.M. and 10:30 P.M., nineteen year old Michael DelGais, Jr., was in the backyard swimming pool at his family home in Bridgeport, with his teenage friends, Cynthia Stone, Ila Swinton and Robin Posey. An individual, identified at trial as the petitioner, walked up to the pool holding a gun. The assailant, who was masked, ordered the teenagers in the house at gunpoint. The group walked through the kitchen, into the living room. The assailant took Michael to the foot of the stairs to call his father. Michael did so. Michael DelGais, Sr., came out of his bedroom and started down the stairs. As the father saw the assailant holding a gun and standing next to his son at the foot of the stairs, Michael Jr., told his father that the assailant wanted money. Michael, Sr., then jumped back and hit the panic button on his home security alarm. As the alarm sounded and the assailant started coming up the stairs, Christopher DelGais, a younger brother of Michael, Jr., came out of his bedroom but was shoved back into the room by his father. Another brother, Gerry, opened his bedroom door, looked out, and saw the assailant raise the gun. Gerry ducked back into the room, as the assailant fired the gun up the stairway. The bullet lodged in the ceiling of the upstairs landing. After the shot was fired, the young women who had been CT Page 2981 seated in the living room ran out into the yard and hid near a shed. The assailant then went upstairs and pointed the gun at Michael DelGais, Sr., who told him not to fire it again, that he would get what the assailant wanted. When the assailant came to the top of the stairs, his mask came off and Michael, Sr. got a good look at him. The elder DelGais then proceeded at gunpoint to his bedroom, took nine-hundred dollars of "vacation money" off a dresser and gave it to the assailant. The defendant kept the gun pointed at Michael, Sr.'s chest while they were in the bedroom. Later, Michael, Sr. was able to make a positive identification of the petitioner at both a photographic lineup and a courtroom identification.
At the criminal trial, the petitioner's attorney made an offer of proof as to a third party culprit. The offer included testimony from Brenda Lindsay who stated that on the night of the incident, approximately one mile away from the DelGais home, at approximately 9:45 P.M., a black, masked male with a gun robbed her while she was working at a shelter known as Janis House. She described the assailant as being about 39 or 40 years old, with gray temples, a beard, wearing jeans, a white shirt and blue bandanna mask.
Thomas Boyd, another Janis House employee, was called to testify on the defense offer of proof. Mr. Boyd stated that the assailant was "40ish", black, with close cropped hair gray on the sides, wearing jeans, a white tee shirt and dark blue bandanna mask. Responding to an inquiry by Judge Ford, Mr. Boyd indicated that he did not know the petitioner, who he described as much lighter skinned and younger than the Janis House assailant.
Our Supreme Court has adopted the two-pronged Strickland test for evaluating ineffective assistance claims. Ostolaza v. Warden,26 Conn. App. 758, 761 (1992). That test requires that the petitioner demonstrate, by a preponderance of the evidence, both that his counsel's performance was substandard and that there exists a reasonable probability that, but for counsel's deficiencies, the outcome of the proceedings would have been different. Id.
As to the first prong of the Strickland test, the petitioner must demonstrate that his trial attorney's representation fell below an objective standard of reasonableness. Johnson v.Commissioner, 218 Conn. 403, 425 (1991). This standard of reasonableness is measured by prevailing, professional norms. Id. The habeas court must make every effort to eliminate the distorting CT Page 2982 effects of hindsight and to reconstruct the circumstances surrounding counsel's conduct from that attorney's perspective at the time of the representation. Id.
The petitioner argues that trial counsel was ineffective by failing to investigate and offer evidence of a third party culprit. Allegedly, following the offer of proof and after argument, and without discussing and obtaining the petitioner's input into the decision, counsel withdrew the offer of proof before the court ruled on its admissibility. Such argument lacks merit.
Trial counsel called as witnesses the two victims of the Janis House crime, Ms. Lindsay and Mr. Boyd. Their testimony revealed significant differences between the Janis House culprit and the DelGais residence assailant. Each witness testified to significant discrepancies in age, dress, facial hair, hair color, and skin color. During argument on the admissibility of the offer of proof, the court commented on potential unfavorable inferences which the jury might draw from such evidence. Trial counsel agreed that the jury could conclude that the petitioner and the Janis House offender were partners in crime. Indeed, trial counsel was concerned that the description of the Janis House assailant matched the petitioner's father, whom some of the jurors briefly saw in court.
Following a recess to discuss such problems with the petitioner and his court appointed guardian, trial counsel withdrew his offer of proof. The trial transcript reveals that counsel obtained the input of the petitioner and his guardian during the recess. At the habeas trial, counsel testified that he made the final decision after consulting with his client and the guardian. Trial counsel testified that the then sixteen year old petitioner had no family support and left the decision up to his attorney. The guardian played no role in the decision to withdraw the offer of proof.
At the habeas hearing neither party introduced expert testimony regarding any professional standards or norms applicable to the issues put forth in the petition, except for trial counsel, the attorney whose representation is under scrutiny in this case. Judicial scrutiny of counsel's performance must be highly deferential, and the habeas court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Quintana v. Warden, 220 Conn. 1, 5
(1931). The court finds that trial counsel's handling of the CT Page 2983 potential third party culprit defense falls within the wide range of acceptable and competent representation. The petitioner has failed to meet his burden of proving that trial counsel's performance fell below an objective standard of reasonableness.
Assuming, arguendo, that the petitioner met his burden on the first prong of the Strickland test, he surely failed thereafter. In order to satisfy the prejudice prong of the Strickland standard, the petitioner must prove, by a preponderance of the evidence, that there exists a reasonable probability that the result of the proceedings would have been different but for the purported, professional errors of counsel. Levine v. Manson, 195 Conn. 636,640 (1985). Reasonable probability means a probability sufficient to undermine confidence in the verdict. Bunkley v. Commissioner,222 Conn. 444, 454 (1992). The petitioner must show that there is a reasonable probability that he remains burdened by an unreliable determination of guilt. Id. Based on the evidence, the court finds that no such reasonable probability exists even if the third party culprit defense had been presented to the jury.
The petitioner's second claim contends that trial counsel was ineffective within the meaning of Strickland for failing to investigate or offer any evidence of the petitioner's alibi. At the habeas trial, the petitioner testified: that his cousin, Jimmy Cooper, was prepared to tell the jury that the petitioner was at home when the DelGais crime occurred; that he advised his attorney of Mr. Cooper and was told that the jury would not believe his relative; that others present in the Cooper home that night included the petitioner's grandmother, aunt, cousin, Mr. Cooper and his girlfriend; that Mr. Cooper had recently posted bond for the petitioner, for a different case, and set a curfew of 9:00 P.M.; and, that Mr. Cooper was aware of the petitioner's presence or absence from the home.
Mr. Cooper testified at the habeas hearing as follows: that the petitioner is his first cousin; that at his grandmother's request, Mr. Cooper posted bond for the petitioner on an unrelated matter; that he required the petitioner to work for him and set a curfew of 9:00 P.M.; that he checked on the petitioner's whereabouts several times per night and was aware of his comings and goings; that on the date and time of the DelGais crime, the petitioner was in Mr. Cooper's home; that he met with the trial attorney during jury selection, told him of the alibi and was brushed off; and, that he was upset by such indifference and unsuccessfully attempted to hire a private attorney for the CT Page 2984 petitioner.
The petitioner's trial attorney testified at the habeas hearing as follows: that in 1990 he was appointed to represent the petitioner in two cases, both of which were tried to juries, the second case being the instant matter; that plea discussions were fruitless because the State refused to negotiate, opting for trials in both cases; that the first case resulted in convictions and a sentence of twenty-five years; that the attorney-client relationship deteriorated thereafter, making the second trial more difficult; that prior to the trial of this matter he spoke with the petitioner's father and Mr. Cooper on a few occasions; that his discovery requests produced information concerning the Janis House crime; that he interviewed Mr. and Mrs. DelGais, Ms. Lindsay and Mr. Boyd; that he did not use an investigator; that the petitioner's father was present for the beginning of jury selection, but disappeared thereafter; that Mr. Cooper told him that the petitioner was at home when the DelGais crime was committed, but that they did not discuss the particulars of an alibi defense; and, that the petitioner told him that he was at home when the DelGais crime was committed, but supplied no names of others who were at home with him.
A habeas court deciding an ineffective assistance claim need not address the question of counsel's performance if it is easier to dispose of the claim on the ground of insufficient prejudice.Pelletier v. Warden, 32 Conn. App. 38, 46 (1993). Because the court feels that analysis of the prejudice prong of the Strickland standard is dispositive, the court proceeds directly to that issue.
Given the state of the evidence against the petitioner, the court finds that the petitioner has failed to meet his burden of proving that counsel's failure to offer Mr. Cooper's testimony to the jury creates a reasonable probability that the result of the trial would have been different. Mr. Cooper was clearly a sincere witness, however, his obvious concern for his cousin, the petitioner, colored his credibility. The court is further troubled by the nonappearance of the petitioner's other alibi witnesses. The petitioner's grandmother, his aunt, his cousin and Mr. Cooper's girlfriend never came to court during the criminal trial nor for the habeas hearing. Even if they had appeared, the positive identification of the petitioner by the victim was overwhelming. Mr. DelGais testified: ". . . I yelled to him not to shoot any more, you know, and that whatever he wanted, I would give him. That's when he came up the stairwell and that's when the two of us were CT Page 2985 standing on the top of the landing and the mask came down off his face and I got a perfect view of his face." (Petitioner's Exhibit A, p. 193).
For the reasons stated above, the petition is dismissed.
Robert A. Martin, Judge