[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a petition seeking habeas corpus relief from allegedly unlawful confinement resulting from a judgment of conviction, after a jury trial, for two counts of sexual assault first degree, in violation of General Statutes § 53a-70, and two; counts of risk of injury to a minor, in violation of General Statutes § 53-21, upon which judgment the petitioner received a total, effective sentence of twenty-five years incarceration, execution suspended after fifteen years, probation five years. CT Page 5625
In his third amended petition, the petitioner claims his confinement is unlawful because his trial counsel, Attorney Richard Perry, rendered ineffective assistance at the petitioner's criminal trial. Specifically, the petitioner contends that Perry's representation was deficient in that he failed to investigate the case properly; failed to present exculpatory evidence; failed to except to an improper jury instruction; failed to conduct adequate voir dire of a juror; failed to cross-examine witnesses properly; and failed to move for a mistrial.
The criminal charges against the petitioner arose from allegations that the petitioner engaged in oral intercourse with his kindergarten age granddaughter and her younger brother sometime during November and December of 1989. These acts purportedly occurred when the children were spending the night at their grandfather's home.
Our Supreme Court has adopted the two-pronged Strickland test for evaluating ineffective assistance claims; Ostolaza v. Warden,26 Conn. App. 758, 761 (1992). That test requires that the petitioner demonstrate, by a preponderance of the evidence, both that his counsel's performance was substandard and that there exists a reasonable probability that, but for counsel's deficiencies, the outcome of the proceedings would have been different. Id.
It is easier to dispose of an ineffective assistance claim on the ground of insufficient prejudice, the habeas court need not address the question of counsel's performance, Pelletier v. Warden,32 Conn. App. 38 (1993), p. 46. Because the court concludes that an examination of the prejudice component of the Strickland test is dispositive, the court proceeds to address that issue directly.
In order to satisfy the second or prejudice prong of theStrickland test, the petitioner must prove, by a preponderance of the evidence that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, Levine v. Manson, 195 Conn. 636 (1985), p. 640. Reasonable probability means a probability sufficient to undermine confidence in the verdict, Bunkley v. Commissioner,222 Conn. 444 (1992), p. 454; that is, the petitioner must show that there is a reasonable probability that he remains burdened by an unreliable determination of guilt, Id.
A. CT Page 5626
The petitioner asserts that Perry provided ineffective assistance by failing to investigate and pursue a potential defense that the real perpetrator of the sexual misconduct was the children's other grandfather, Lyman H. Garland, Jr. Garland was the children's maternal grandfather, and the petitioner is their paternal grandfather. The petitioner bases this claim on the assertion that the granddaughter never referred to her molester by name but merely described that person as "grandpa." The other, younger victim never acknowledged being molested.
The petitioner also points to the fact that his granddaughter testified at his criminal trial that her grandfather's house was grey and that the perpetrator had a beard. The petitioner contends that Garland lived in a grey house and had a beard, while he neither resided in such a house nor had a beard during November and December 1989. According to the petitioner these facts ought to have alerted Perry that Garland may have been the grandfather against whom the allegation was made. The petitioner argues that, as a consequence, Perry should have offered testimony and evidence at the petitioner's criminal trial regarding the color of the respective grandfathers' houses, the presence or absence of a beard on their faces, and the opportunity Garland had to have assaulted the children.
The court has carefully reviewed all the evidence introduced at the habeas hearing, including the transcript of the petitioner's criminal trial, and finds that the petitioner has failed to meet his burden of proving, by a preponderance of the evidence, the prejudice component of the Strickland standard. Contrary to the petitioner's claim, the petitioner's granddaughter specifically identified the place of the sexual acts as the petitioner's residence (Petitioner's Exhibit A-1, pp. 23 and 29). She expressly named the residents of that location as "Jacqueline and Jim," the first names of the petitioner and his wife (Petitioner's Exhibit A-1 p. 23). She made a courtroom identification of the petitioner as the grandfather to whom she was referring regarding her molestation (petitioner's Exhibit A-1, pp. 24 through 29).
The victim's version of pertinent events was repeated to her mother; her father, the petitioner's son; family friends; and a police officer (Petitioner's Exhibit A-1, pp. 40, 62 through 64, 77, 92, and 98). The testimony at the criminal trial made it abundantly clear that the victim identified her assailant as the grandfather in whose home she had occasionally stayed overnight CT Page 5627 during November and December 1989. There was no credible evidence adduced at the habeas hearing that the victim ever stayed overnight at her other grandfather's home during this time period. In fact, there was no credible evidence adduced that she even saw Garland at any time during these months.
Additionally, the victims' mother testified at the habeas hearing that her daughter distinguished between her two grandfathers by referring to the petitioner as "grandpa" and to Garland as "gramps." In the victim's several out-of-court and in-court descriptions of the person that molested her, she calls that person "grandpa" and never used the name "gramps."
As to the presence of facial hair, the court finds the petitioner's testimony at the habeas hearing that he was without a beard in November and December 1989 to be unworthy of belief. The photo of the petitioner, taken when he was being booked on the underlying charges on February 8, 1990, depicts the petitioner having a substantial beard (Respondent's Exhibit 2).
It should be noted that neither party presented the testimony of a legal expert at the habeas hearing concerning the issues of professional standards or prejudice. Not every claim of ineffective assistance requires the presentation of expert testimony, Evans v. Warden, 29 Conn. App. 274, 282 (1992). Sometimes the trier-of-fact will be able to determine such claims without the need for such testimony, Id. However, the necessity for such expert testimony must be determined on a case-by-case basis and depends on the complexity of the issues before the habeas court, Johnson v. Commissioner, 34 Conn. App. 153, 158 (1994).
The court finds that the petitioner has failed to demonstrate that, but for Perry's failure to attempt to portray the children's other grandfather as the perpetrator, the outcome of the petitioner's criminal trial would have been different. Given the strong identification of the petitioner as the person to whom the victim was referring in her repeated recountings of the sexual misconduct and the extremely flimsy and remote conjecture that it might have been her other grandfather who had assaulted her, the failure to take the tack the petitioner now proffers had little bearing on the criminal case.
 B.
The petitioner also contends that Perry rendered inadequate CT Page 5628 representation by failing to take exception to the trial judge's instructions to the jury at his criminal trial. More precisely, the petitioner argues that because the children "were having problems" (petitioner's posttrial brief, p. 4) during the summer of 1989, Perry ought to have alerted the trial judge to the possibility that the offenses occurred before the October 1, 1989, change in the law of sexual assault first degree with respect to children under thirteen, P.A. 89-359, now codified as General Statutes § 53a-70 (a)(2). This change eliminated the element of force for sexual assault first degree pertaining to young children which had previously been required for conviction.
The information filed against the petitioner and upon which he was tried specifically alleged that the sexual misconduct occurred during November and/or December 1989. No relevant evidence that sexual assaults happened earlier was admissible or proffered at the petitioner's trial. The prosecution evidence was that the victim's mother had dropped the children off at the petitioner's home for overnight visits during November and December 1989 and that the molestations happened during these visits. The petitioner's claim that Perry ought to have requested that the trial judge charge the jury as to the law of sexual assault applicable before October 1989 is utterly without merit.
 C.
The petitioner also asserts that Perry was professionally delinquent by inadequately examining a venire-person who eventually sat as a juror for the petitioner's criminal trial. The juror in question is Lawrence Hanrahan, whose son was, at the time of jury selection, a police officer with the Norwich Police department, the law enforcement agency which investigated the charges against the petitioner. The prospective juror revealed his son's employment and was examined thoroughly by both sides concerning his impartiality in light of his son's occupation and connection with the investigating agency (Petitioner's Exhibit E).
The court finds that the juror's son had no nexus to the petitioner's case nor did the juror ever discuss the case with his son. There is no evidence whatever that the petitioner suffered any prejudice by Hanrahan's participation as a juror. Again, the petitioner has failed to meet his burden of establishing prejudice under the second prong of the Strickland test.
D. CT Page 5629
The petitioner next argues that Perry was ineffective by declining to file a motion for a bill of particulars preceding his criminal trial. Perry testified at the habeas hearing that he refrained from filing such a motion because he had full access to the prosecutor's file and knew that the offenses allegedly occurred on divers, unspecified dates in November and December 1989. As noted above, no legal expert testified at the habeas hearing except for Perry himself.
The court finds that the petitioner has failed to prove that, but for the absence of a bill of particulars, the outcome of his criminal trial would have been different. The nature of the child-victim's complaint was such that no precise time and date could be ascertained and alleged by the prosecution. Where it would be futile to require the prosecutor to provide the exact date of the offense, no bill of particulars need be filed with respect to that information, State v. Spigarolo, 210 Conn. 359, 387 (1989). The court discerns no benefit that would have accrued to the petitioner by the filing of such a motion by Perry, and, therefore, the second, or prejudice, component of the Strickland standard remains unproven.
 E.
The petitioner also contends that Perry ought to have offered into evidence at the petitioner's criminal trial a "trip sheet" which he purports to be a record from the petitioner's used car business of the petitioner's work schedule during November 1989 (Petitioner's Exhibit F). The document appears to indicate that the petitioner may have been out-of-state during weekends in November 1989.
Perry testified at the habeas hearing that he never offered the trip sheet into evidence because the petitioner never denied being home during the relevant time period in November and December 1989. Perry stated he specifically asked the petitioner to describe to him the petitioner's whereabouts during this time period.
The petitioner testified at the habeas hearing that he did inform Perry he was out-of-state on certain weekends in November and December 1989 and showed the trip sheet to Perry. Credibility is for the trier-of-fact to determine. The court finds Perry's recollection on this point to be both credible and accurate. CT Page 5630
One of the petitioner's sons testified that the victims were in the petitioner's house when the petitioner was home during November and December 1989 and that the children responded affectionately to the petitioner. In any event, the trip sheet only refers to November 1989 and contains no entries regarding the petitioner's December 1989 schedule.
The court finds that the petitioner has failed to prove that, but for the absence of this piece of evidence, the outcome of the petitioner's criminal trial would have been different.
 F.
The petitioner also contends that Perry unprofessionally allowed the petitioner to testify at his criminal trial despite the petitioner's reluctance to do so. The petitioner testified very briefly at his criminal trial. Perry asked the petitioner three questions on direct examination (Petitioner's Exhibit A-2, p. 38). On cross-examination the prosecutor elicited testimony from the petitioner acknowledging that he had a previous felony conviction for Larceny second degree (Petitioner's Exhibit A-2, p. 39).
At the habeas hearing the petitioner stated that he told Perry he wanted to decline to testify at his criminal trial because of his felony conviction. Perry testified at the habeas hearing that the petitioner never expressed to him a reluctance to testify at his criminal trial. As noted above, credibility is the fact finder's determination. The court finds Perry's testimony on this point to be credible and his recollection accurate. Consequently, the petitioner has failed to meet his burden of proving this allegation.
 G.
The petitioner's final claim of ineffectiveness concerns Perry's failure to move for a mistrial despite a purported violation of the trial court's sequestration order. The petitioner asserts that, at one point during his criminal trial, Tracy Brooks, the girl friend of one of his sons, exited the courtroom in which his trial was being held and spoke to Norwich Police Officer Drozynski, a prosecution witness, about another witness's testimony. The trial court had issued a sequestration order at the commencement of evidence (Petitioner's Exhibit A-1, p. 3). CT Page 5631
As a preliminary matter, it should be noted that a sequestration of witnesses order, under General Statutes § 54-85a and its parallel rule of practice, Practice Book § 876, by itself does note bar witnesses from discussing their testimony with others, State v.Williams, 169 Conn. 322, 331 (1975). The trial court has the inherent power to forbid such discussions, but that is a distinct order from the one authorized under General Statutes § 54-85a and § 876 which merely excludes prospective witnesses from the court-room. In this case the petitioner has failed to establish that the trial court issued the second type of order prohibiting witnesses from discussing their testimony with others.
Even if such an order had issued, the court finds, alternatively, that such an order was never violated. Drozynski was interviewed by Perry at the time of the criminal trial when the petitioner brought the possible violation to Perry's attention. Perry was satisfied, after the interview, that the trial court's order had not been breached. Drozynski also testified at the habeas hearing. He related that Brooks, who was not a witness at the criminal trial or the habeas hearing spoke to several persons in the hallway adjacent to the courtroom but never spoke to him about any other witness's testimony. The court finds Drozynski's testimony to be believable and accurate. The petitioner has failed to prove that any transgression of the sequestration orders took place.
For these reasons, the petition is dismissed.
Sferrazza, J.