[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter is a petition seeking habeas corpus relief from allegedly unlawful confinement resulting from a judgment of conviction, after a jury trial, of capital felony murder, in violation of General Statutes § 53a-54b, and three counts of murder, in violation of General Statutes § 53a-54a, upon which judgment the petitioner received a total, effective sentence of life imprisonment without possibility of release.
In counts 2, 4, and 5 of the amended petition, the petitioner claims his confinement is unlawful because his trial counsel, Attorney Stephen Moran, rendered ineffective assistance by failing to offer evidence that the petitioner was intoxicated at the time of the shooting; by failing to except to the trial court's CT Page 10417 sustaining of an objection to a certain line of cross-examination of a prosecution witness; and by failing to call Reggie Smith as a witness for the defense at the petitioner's criminal trial. In counts 1, 3, and 6 of the amended petition, the petitioner also, claims that the absence of the intoxication evidence constituted a denial of due process; that the curtailment of cross-examination violated the petitioner's right to confrontation; and that he is "actually innocent" of the charges for which he stands convicted.
The petitioner was arrested for the October 13, 1989, shotgun killing of three victims and the serious wounding of another. On March 21, 1991, the jury considering the petitioner's case rendered a verdict of guilty as to capital felony murder, three counts of murder, one count of attempted murder, and one count of assault first degree. On May 2, 1991, the petitioner was sentenced to an effective sentence of life imprisonment without possibility of release. The petitioner appealed from the judgment of conviction, and, on appeal, the judgment was affirmed as to the capital felony murder and murder counts but reversed as to the attempted murder and assault counts, State v. Hinton, 227 Conn. 301 (1993). On October 2, 1991, the petitioner filed this habeas corpus petition, and, on August 2, 1995, the court heard the evidence.
A review of the evidence presented at the habeas hearing, in particular the transcripts of the petitioner's criminal trial, disclose that the state alleged and offered evidence tending to prove that the petitioner had been one of a group which was feuding with another gang in the city of Hartford. The friction between the two groups escalated into a physical altercation on October 7, 1989. On October 13, 1989, the petitioner mistook Sheldon Webb for a member of the rival faction and pointed a sawed-off shotgun, which he had concealed in his jacket, at Webb. Upon recognizing his mistake, the petitioner apologized, restored the shotgun to a hiding place beneath his jacket, and explained the error to Webb. A little later, Bennie Fulse stopped his vehicle and conversed with the petitioner. The petitioner asked Fulse if the petitioner might borrow Fulse's car to execute a "drive-by" shooting of his antagonists. Fulse refused this request. The petitioner then joined Webb and Webb's companions as they walked along Martin Street. At this point, members of the rival group approached Webb's party on Martin Street. The petitioner separated himself from Webb and his companions and moved to the middle of Martin Street. "Cat," a member of the enemy group, confronted the petitioner by waving a weapon of some sort and remarked to the petitioner "Remember this?" The petitioner reacted by retorting CT Page 10418 "Remember this!", producing the sawed-off shotgun, and firing the shotgun at his nemeses, killing three and seriously injuring another. The petitioner fled to his home after the shooting.
At his criminal trial, the petitioner's defense was justification based on self-defense. No evidence of the petitioner's status with respect to intoxication or sobriety was presented.
 I
As to counts 1 and 3 of the amended petition, the petitioner asserts that his due process and confrontation rights were violated at his criminal trial. The petitioner never raised these issues at his criminal trial or on direct appeal. The petitioner's due process argument stems from the absence of consideration of the intoxication defense. The petitioner could have presented such a defense under General Statutes § 53a-7 at his criminal trial. Also, the petitioner could have excepted and appealed from the trial court's adverse evidentiary ruling which he now claims violated his right to confrontation. The petitioner is attempting to address these issues for the first time in this habeas corpus action.
In Johnson v. Commissioner, 218 Conn. 403 (1991), our Supreme Court adopted the "cause and prejudice" standard espoused by the U.S. Supreme Court in Wainwright v. Sykes, 433 U.S. 72 (1977), which standard limits the reviewability of claims first raised in a habeas corpus petition. In Johnson v. Commissioner, supra, the cause and prejudice criteria was made applicable to procedural defaults which occurred at the trial level. This standard was extended to apply to the failure to raise claims on appeal inJackson v. Commissioner, 227 Conn. 124, 132 (1993). The burden of proving good cause and prejudice for procedural default rests with the habeas petitioner, Johnson v. Commissioner, supra, 409.
The petitioner submits as a candidate for "good cause" justifying his failure to raise these issues earlier, the inactions of his trial counsel (Amended Petition Count 1, paragraph 11 and Count 3, paragraph 18). Good cause, however, must be external to the defense and be some factor besides attorney error, Jackson v.Commissioner, supra, 137. The mere failure of counsel to recognize the factual or legal basis for a claim does not constitute good cause for procedural default, Parker v. Commissioner, 27 Conn. App. 675
(1992); Johnson v. Commissioner, supra, 422. CT Page 10419
The court finds that the petitioner has failed to meet his burden of establishing good cause for these defaults at trial and on appeal and dismisses these counts without further reviewing their merits.
 II
The cause and prejudice standard of Wainwright v. Sykes, is inapplicable to claims of ineffective assistance, however. The court turns to counts 2, 4, and 5 of the amended petition which counts assert that Moran rendered ineffective assistance by failing to secure evidence of and present an intoxication defense under § 53a-7 at the petitioner's criminal trial; by failing to except to the trial court's evidentiary ruling restricting cross-examination of Fulse; and by failing to call Reggie Smith as a defense witness.
Our Supreme Court has adopted the two-pronged Strickland test for evaluating ineffective assistance claims; Ostolaza v. Warden,26 Conn. App. 758, 761 (1992). That test requires that the petitioner demonstrate, by a preponderance of the evidence, both that his counsel's performance was substandard and that there exists a reasonable probability that, but for counsel's deficiencies, the outcome of the proceedings would have been different. Id.
As to the first prong of the Strickland test, the petitioner must demonstrate that his trial attorney's representation fell below an objective standard of reasonableness, Johnson v.Commissioner, 218 Conn. 403, 425 (1991). This standard of reasonableness is measured by prevailing, professional norms, Id. The habeas court must make every effort to eliminate the distorting effects of hindsight and to reconstruct the circumstances surrounding counsel's conduct from that attorney's perspective at the time of the representation, Id.
 A.
Count 2 of the amended petition alleges that Moran ought to have offered evidence under General Statutes § 53a-7 that the petitioner was intoxicated at the time of the shooting so as to negate the intent necessary to convict the petitioner of murder. At the habeas hearing, the petitioner testified that on the day of the shooting he had smoked and ingested "lots of drugs," specifically marijuana and cocaine and that he was "high" at the CT Page 10420 time of the shooting. He further averred that he had related this drug history to Moran, but Moran never discussed the possibility of an intoxication defense with him. The court finds this testimony unworthy of belief.
Moran also testified at the habeas hearing. He stated that, despite numerous pretrial discussions with the petitioner about his case, the petitioner never once disclosed to Moran that he was using drugs or high on the day of the incident, nor did the petitioner ever indicate to Moran that the shooting was accidental. The court finds Moran's testimony at this point to be credible and accurate. On October 14, 1989, the day after the shooting, the petitioner gave a written statement to the police recounting the events of the previous day (Respondent's Exhibit 1). The petitioner's statement contains no allusion to the use of drugs or disorientation because of drugs or that the firing of the shotgun was anything but intentional. To the contrary, the petitioner's statement reveals that the petitioner admitted to intentionally aiming the shotgun at the victims' feet and firing it in order to ward off any attack. Reggie Smith also testified at the habeas hearing and stated he was with the petitioner earlier on the date of the incident and never observed the petitioner consume any drugs nor could he state that the petitioner was high when the shooting occurred.
The court finds that the petitioner's claim of intoxication at the time of the shooting is a fabrication concocted subsequent to his conviction. The court also finds that no evidence of the petitioner's intoxication was ever related to Moran during the time he represented the petitioner. Under these circumstances, Moran had no reasonable, professional duty to investigate and present, an intoxication defense under General Statutes § 53a-7. Accordingly, the court also finds that the petitioner has failed to meet his burden of proving, by a preponderance of the evidence, that Moran's representation was deficient under the first prong of theStrickland standard with respect to this issue.
 B.
As to the fourth count of the amended petition, the petition asserts that Moran rendered ineffective assistance by inadequately arguing against the trial court's evidentiary ruling restricting cross-examination of Fulse and failing to except to that unfavorable ruling. Additional facts are necessary to address this assertion. CT Page 10421
Bennie Fulse testified as a state's witness at the petitioner's criminal trial (Petitioner's Exhibit A-1, pp. 208 through 234.) He testified that, on October 13, 1989, he was driving his car in the area of Martin and Capen Streets and saw a gathering of young men which included the petitioner. Fulse stopped at a stop sign and conversed with the petitioner. The petitioner informed Fulse of his "beef" with the rival group and expressed a desire to shoot them. The petitioner asked Fulse to lend him the use of Fulse's car for that purpose, but Fulse declined to accede to this request. Shortly thereafter, Fulse drove to the area of Garden and Nelson Streets and observed the group with whom the petitioner was at odds. Fulse advised the group to leave the area to avoid being shot. A little later, Fulse saw the petitioner encounter this group on Martin Street. Fulse heard the gunshot and saw the petitioner holding a rifle. Fulse also saw injured people and drove one of the victims to the hospital.
At the conclusion of direct examination by the state, Fulse acknowledged that, at the time of the incident and during part of the time preceding the petitioner's trial, he had his own unrelated criminal case pending. Fulse remarked that his case had been concluded before the petitioner's trial at which he was testifying and that no promises were made to him regarding the disposition in his own case in conjunction with his testifying for the state at the petitioner's later trial. Moran sought to question Fulse as to the details of the disposition in Fulse's matter, but the prosecutor objected to this line of questioning as irrelevant. The trial court sustained the objection. Moran took no exception to this ruling.
The petitioner contends that Moran ought to have argued more strenuously as to the propriety of this line of questioning and ought to have voiced an exception in order to preserve the issue for appeal. The court finds that the petitioner has failed to prove that a more vigorous argument would have altered the trial court's decision. At the habeas hearing, the petitioner offered the testimony of a legal expert, Attorney Thomas Farver. Farver, the petitioner's own expert witness, indicated that it was "speculative" whether the trial judge would have allowed further discussion on the matter. It should be noted that Practice Book § 288 permits argument on admissibility questions only if the trial court requests argument. Here, the trial judge clearly delineated his ruling without requesting additional comment by counsel. It CT Page 10422 is unlikely gratuitous comment would have been welcomed by the trial judge or have changed his ruling.
With respect to failing to except to the trial court's ruling, it is noted that the petitioner's criminal trial and direct appeal decision preceded October 1, 1993, the effective date for an amendment to Practice Book § 288 which eliminated the requirement of taking an exception to the court's evidentiary ruling in order to preserve that issue for appeal. Consequently, at the petitioner's criminal trial and appeal, excepting to the court's ruling was still necessary to save the issue for appellate review.
As noted above, our Supreme Court has adopted the two-prongedStrickland test for evaluating ineffective assistance claims,Johnson v. Commissioner, 218 Conn. 403 (1991), p. 425. Under this standard, the petitioner must prove both that his trial attorney's performance was deficient, and that this deficient performance prejudiced his defense. Id., p. 424. If it is easier to dispose of the claim on the ground of insufficient prejudice, the habeas court need not address the question of counsel's performance,Pelletier v. Warden, 32 Conn. App. 38 (1993), p. 46. Because the court concludes that an examination of the prejudice component of the Strickland test is dispositive, the court proceeds to address that issue directly.
In order to satisfy the prejudice prong of the Strickland
test, the petitioner must prove, by a preponderance of the evidence, that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, Levine v. Manson, 195 Conn. 636 (1985), p. 640. Reasonable probability means a probability sufficient to undermine confidence in the verdict, Bunkley v. Commissioner,222 Conn. 444 (1992), p. 454; that is, the petitioner must show that there is a reasonable probability that he remains burdened by an unreliable determination of guilt, Id.
The court finds that the petitioner has failed to demonstrate that, but for a lack of additional inquiry concerning the disposition of Fulse's case, the outcome of the petitioner's criminal trial would have been different. The jury was already apprised of the coexistence of that matter and the shooting and pendency of the petitioner's criminal case. On direct examination, Fulse had denied being offered leniency or benefit in exchange for testifying for the state against the petitioner. Because Fulse's matter had been previously disposed of, it is difficult to perceive CT Page 10423 that he was motivated to skew his testimony against the petitioner in order to curry favor with the prosecuting authority.
Neither Fulse nor the prosecuting authority at the petitioner's criminal trial were called as witnesses at the habeas hearing. No evidence of any deal between Fulse and the state was proffered. Not even the disposition of the habeas case was presented at the habeas hearing. The court cannot infer that merely because Fulse had a criminal matter pending and concluded while the petitioner's matter was pending that some offer of leniency existed. To surmise that additional questioning of Fulse would have revealed information sufficient to influence the jury's verdict would be pure speculation.
The court finds that the petitioner has failed to satisfy the second, or prejudice, component of the Strickland test with respect to Moran's purported deficiency in failing to argue more cogently and except to the trial court's ruling.
 C.
In the fifth count of the amended petition, the petitioner contends that Moran rendered ineffective assistance by failing to interview and present as a defense witness Reggie Smith. Specifically, the petitioner alleges in that count that Smith would have testified that the petitioner accidentally fired the shot that killed and maimed the victims (Amended Petition, Count 5, paragraph 12).
As mentioned above, Smith testified at the habeas hearing. The court concludes that Smith's testimony, even if assumed to be believable, would not exculpate the petitioner by establishing that the petitioner inadvertently fired the sawed-off shotgun. Also, Smith's credibility is low. Smith testified that the incident occurred at 4:00 P.M. on October 13, 1989, while it was still light outside. All the other evidence adduced fixes the time of the shooting at around 9:30 P.M. Smith conceded his recollection of the events in question was poor. But Smith's testimony fails to exonerate the petitioner in the manner alleged in the pleading in any event.
Smith stated that he observed the two rival groups approach each other. The petitioner then stepped away from his cohorts and into the middle of Martin Street. The petitioner produced a sawed-off shotgun, held the shotgun level, and fired. Smith never saw CT Page 10424 the petitioner specifically assume a stance or particularly aim the weapon. This testimony is a far cry from being equivalent to demonstrating that the petitioner fired the weapon accidentally.
Clearly, Moran was well within the bounds of reasonable, professional representation in declining to call Smith as a witness. The petitioner had indicated to Moran and to the police in his statement that he fired the weapon in self-defense and purposefully. Smith's version of events contradicted the petitioner's version to police in that Smith saw the petitioner hold the sawed-off shotgun level when he fired it rather than downward toward the victims' feet. Also, Smith never saw the enemy gang brandish any weapons. This conflicts with the petitioner's claim of self-defense and other evidence that "Cat" held a stick-like object in a threatening way.
Finally, Smith acknowledged that during the time following the incident he was never interviewed by the police because he refused to speak to the police or anyone else about the incident, heeding the advice of his aunt. No evidence was adduced at the habeas hearing that Smith would have broken his silence to speak with Moran or other members of the defense team while the petitioner's criminal case was pending. Viewing the circumstances from Moran's perspective at the time he was preparing for the petitioner's trial, Moran would have had no reasonable access to knowledge that Smith was withholding information useful to the defense, even if Smith's testimony could be generously characterized as useful.
The court finds that the petitioner has failed to prove that Moran's representation was substandard in omitting Reggie Smith as a defense witness nor that the absence of Smith's testimony prejudiced the petitioner. Both components of the Strickland test remain unsatisfied in this regard.
 III
Count 6 of the amended petition alleges that the newly proffered evidence of the petitioner's intoxication at the time of the shooting, the additional cross-examination of Fulse concerning the disposition of Fulse's criminal matter, and the newly discovered testimony of Smith as bearing on the unintentional nature of the shooting point "unerringly" to the petitioner's actual innocence. The court finds that the petitioner's evidence falls far short of any of the standards of review for actual innocence claims as set forth in Summerville v. Warden, 229 Conn. 397, CT Page 10425 439 (1994); viz. the most compelling evidence of actual innocence; a truly persuasive demonstration of actual innocence; an extraordinarily high and truly persuasive demonstration of actual innocence; evidence on which no rational trier of fact could find proof of guilt beyond a reasonable doubt; or evidence that casts fundamental doubt on the accuracy and reliability of the original verdict, and that, if credited, undermines the entire prosecution case and points unerringly to innocence.
The court has determined in part II of this opinion that the proffered evidence of intoxication is unworthy of belief. Also, such evidence was available to the petitioner at trial because the source of this evidence is the petitioner himself. The petitioner declined to testify in his own behalf at his criminal trial. In no way can this information be classified as newly discovered.
Also, in Part II of this opinion the court has found that the petitioner has failed to establish that further cross-examination of Fulse would have added anything of substance to the petitioner's case and that Smith's testimony would have established that the petitioner fired the weapon accidentally. Thus, the factual foundation upon which the petitioner's allegation of actual innocence is predicated is lacking.
For these reasons, the petition is dismissed.
Sferrazza, J.